SMITH v. FORRESTER-NACE BOX COMPANY, Appellant.

In Banc, February 26, 1906.

1. **NEGLIGENCE: Proximate Cause: New Issue.** A contention of respondent on appeal that the crankiness of a planing machine and its propensity to suddenly shoot a plank towards the back rollers, etc., was the proximate cause, or one of the proximate causes, of his injury, will not be available to him, on appeal, if neither by his petition nor by his instructions any such issue was submitted to or tried in the lower court.

2. ———: ———: ———: **Warning.** Where plaintiff charges his master with failure to warn him of certain defects in the ma-

chine with which he was working, the master cannot be held for negligence in failing to warn him of certain other defects.

3. **Warning: When Not Required.** When the voluntary act which injured the adult plaintiff was such as all men of ordinary intelligence would pronounce dangerous, it was not negligence in his employer not to warn him of the obvious danger in performing that act.

4. ———: **Hazardous Act: Performed Before.** The fact that plaintiff and other operatives of the planing machine had previously performed without injury the same exceedingly dangerous act which injured plaintiff, does not make the act any the less negligent.

5. ———: ———: ———: **Custom.** The customary way of unclogging a planing machine was, while the machine was running, to place the hand in the eight-inch space between the presser-bar and rollers and take out the clogging shavings and sticks therein. The speed of the machine was such that it moved a plank fifteen inches a second across this space. Plaintiff, an assistant to the operator, forty-five years old and having worked with the machine two or three days, saw a plank three-eighths of an inch thick and three or four feet long in this eight-inch space, and put in his hand with the intention of raising it above the rollers and taking it out. As he took hold of the board the knives seized it and drove it, with his hand, into the rollers. There had formerly been a shield over the rollers, but for two months there had been none, and plaintiff charges his injuries to the absence of this shield and to defendant's failure to warn him that it was dangerous to undertake to unclog the machine in the absence of such shield. *Held*, that the custom of removing the shavings and sticks did not cover his act of taking hold of the board, and his act being voluntary and imminently and obviously dangerous, he cannot recover. *Held*, also, that had the shield been present it would not have entirely obviated his injury, but it would at most have been only less in degree.

6. ———: **Hazardous Risk.** No man of ordinary prudence will put his hand to the obvious hazard of a half second, and no man has either the legal or moral right to do so unless duty and the exigencies of the situation demand it.

7. ———: **Choosing Dangerous Way.** Where an employee chose the obviously dangerous way of unclogging a planing machine by removing a plank while it was running, when the machine could have been stopped by simply throwing a lever and this safe way was apparent, he cannot recover.

8. ———: **Statute: Guarding Drums.** The statute requiring "the belting, shafting, gearing and drums" in factories to be guarded has no application to the rollers of a planing machine.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover,* Judge.

REVERSED.

*Harkless, Crysler & Histed* for appellant.

(1) The evidence failed to show any negligence on the part of defendant. (2) The mere failure to cover the rollers with a shield did not establish negligence *per se,* or show that it was the proximate cause of plaintiff's injury. McGuerty v. Hale (Mass), 36 N. E. 682; Carroll v. Williston (Minn.), 46 N. W. 353. (3) A failure to instruct the servant as to dangers of a machine, which are obvious, does not constitute negligence. Nugent v. Milling Co., 131 Mo. 241; Herbert v. Boot & Shoe Co., 90 Mo. App. 305; Jones v. Roberts, 57 Ill. App. 56; Doolittle v. Pfaff, 92 Ill. App. 301; Groth v. Thomann, 86 N. W. 178. (4) Plaintiff was guilty of negligence precluding his right of recovery. Doerr v. Brewing Ass'n, 176 Mo. 574; George v. Mfg. Co., 159 Mo. 333; Meily v. Railroad, 81 S. W. 639; Richardson v. Mesker, 171 Mo. 667. (5) Plaintiff having voluntarily attempted to remove the obstruction from the knives while the rollers were in motion, instead of stopping them, is bound by the consequences resulting from his choice of the more dangerous of the two courses of procedure which were open to him. Moore v. Railroad, 146 Mo. 572; Palmer v. Kinloch & Co., 91 Mo. App. 106.

*L. B. Sawyer* and *Porterfield & Conrad* for respondent.

(1) The petition states a cause of action and defendant makes no objection in its brief and argument on that score. The allegations of negligence in the peti-

tion were abundantly proven. The evidence on the part of plaintiff thoroughly established defendant's negligence in not furnishing plaintiff with reasonably safe machinery about which to work in the performance of his duties, and as to the failure of defendant to warn or instruct plaintiff how to unclog the planer, defendant knowing the plaintiff to be inexperienced and untutored. Sec. 6433, R. S. 1899; Lore v. Mfg. Co., 160 Mo. 621; Bair v. Heibel, 103 Mo. App. 633; Nichols v. Plate Glass Co., 126 Mo. 55; Curtis v. McNair, 173 Mo. 270; Porter v. Railroad, 71 Mo. 71; Bowen v. Railroad, 95 Mo. 276; Hamman v. Coal & Coke Co., 156 Mo. 243; Doyle v. Trust Co., 140 Mo. 15; Hamilton v. Mining Co., 108 Mo. 364; Henry v. Railroad, 109 Mo. 488; Wheeler v. Mfg. Co., 153 Mass. 294; Ertz v. Pierson, 86 N. W. 680; Verdelli v. Gray Harbor, 115 Cal. 517; Jarvis v. Wrench Co., 177 Mass. 170; Laundry Co. v. Crawford, 13 Am. Neg. Rep. 355; Atkins v. Merrick, 142 Mass. 431. (2) The shield was broken off from its place on the top back roller two or three months before plaintiff was injured and allowed to remain off until after the injury occurred. It was clearly possible and practicable to guard the back rollers as they were guarded in the construction of the planer. The failure of defendant to replace the shield when it was broken off and keep it replaced is, under section 6433, Revised Statutes 1899, negligence *per se.* Lore v. Mfg. Co., 160 Mo. 621; Bair v. Heibel, 103 Mo. App. 633; Colliott v. Mfg. Co., 71 Mo. App. 171. (3) The question of contributory negligence was, under the evidence in this case, and the law of this State, a question for the jury. Cole v. Railroad, 183 Mo. 81; Pauck v. St. Louis Beef & Provision Co., 159 Mo. 467; Hamman v. Coal & Coke Co., 156 Mo. 243; Bender v. Railroad, 137 Mo. 240; Weller v. Railroad, 120 Mo. 649; Hamilton v. Mining Co., 108 Mo. 365; Dean v. Woodenware Works, 106 Mo. App. 167; Palmer v. Kinloch Tel. Co., 91 Mo. App. 106; Herbert v. Boot & Shoe Co., 90 Mo. App. 305; Ingerman v.

Moore, 90 Cal., 410; Evans Laundry Co. v. Crawford, 13 Am. Neg. Rep. 355; Jarvis v. Wrench Co., 177 Mass. 170; Atkins v. Merrick, 142 Mass. 431; Ertz v. Pierson, 86 N. W. 680; Wheeler v. Mfg. Co., 153 Mass. 294; Norris v. Packing Co., 17 Am. Neg. Rep. 48. (4) Defendant also pleaded assumption of risk on the part of plaintiff. The fact that plaintiff was not engaged at the time he was injured in the work he was employed to do makes that defense ineffective. To say the least, the question was properly submitted to the jury. Pauck v. Beef & Provision Co., 159 Mo. 467; Settle v. Railroad, 127 Mo. 336; Herdler v. Stove & Range Co., 136 Mo. 17; Wendler v. People's Co., 165 Mo. 527; Blanton v. Dold, 109 Mo. 64; Hurst v. Railroad, 163 Mo. 309; Hamman v. Coal Co., 156 Mo. 232; Palmer v. Kinloch Tel. Co., 91 Mo. App. 106; Shore v. A. B. Co., 86 S. W. 905; Dean v. Woodenware Works, 106 Mo. App. 167; Wheeler v. Mfg. Co., 153 Mass. 294; Keegan v. Kavanaugh, 62 Mo. 232. (5) The defective or unsuitable condition of the planer which resulted in its frequently choking up and requiring unclogging, together with the absence of the shield, was the proximate cause of the injuries to plaintiff. Lore v. Mfg. Co., 160 Mo. 608; Musick v. Dold Packing Co., 58 Mo. App. 322; Bassett v. St. Joseph, 53 Mo. 290. (6) It was the hidden and unexpected danger of the shooting of the board toward and between the back rollers that proximately caused plaintiff's injuries. The hidden danger hurled his hand between the rollers. See cases cited to point 5. (7) The defendant knew that plaintiff was totally inexperienced and uninstructed in the matter of working with a planer and that the planer was a dangerous piece of machinery. It was therefore the legal duty of defendant to instruct plaintiff as to the proper method of unclogging the planer and warning him of the dangers connected therewith. Nichols v. Plate Glass Co., 126 Mo. 55; Curtis v. McNair, 173 Mo. 270; Pauck v. St. Louis Beef & Provision Co., 159 Mo. 467; Dean v. Woodenware Works, 106

Mo. App. 167; Evans Laundry Co. v. Crawford, 13 Am. Neg. Rep. 355; Thomas Jaroszeski v. Mfg. Co., 8 Am. Neg. Rep. 481; Wheeler v. Wason Mfg. Co., 153 Mass. 294; Atkins v. Merrick, 142 Mass. 431; Jarvis v. Wrench Co., 177 Mass. 170; Hamilton v. Mining Co., 108 Mo. 364. (8) Plaintiff being inexperienced and uninstructed by defendant in the matter of unclogging the planer, he employed the same methods as were used by the experienced men in defendant's factory and the methods that were customary therein and tacitly approved by the foreman who was present every few minutes superintending the work. Under the circumstances the court could not hold, as a matter of law, that plaintiff was guilty of contributory negligence. The same applies to the fact that it was customary to unclog the planer while it was running. It was the custom and practice in defendant's factory to unclog the planer while it was running, except only when it was clogged up so that it could not be cleaned out without stopping it. See cases cited to points 5 and 7. (9) All the witnesses agreed and the defendant concedes that if the shield had been in its place plaintiff's hand and arm would not have been injured. Witness Kline was competent, by reason of his long experience, to testify as to the purpose of the shield and his evidence upon that point was properly admitted. That evidence could have had very little, if any, influence with the jury, however, because it was conceded that if the shield had been in its place the injuries would not have occurred, and, more particularly, because the jury personally inspected the planer with the shield off and on. Doyle v. Trust Co., 140 Mo. 20.

MARSHALL, J.—This is an action for ten thousand dollars damages for personal injuries received by the plaintiff on the 31st of December, 1901, while in the employ of the defendant as a helper in operating a planer used by the defendant in manufacturing boxes.

The plaintiff recovered a judgment of seven thousand dollars, from which the defendant, after proper steps, appealed.

THE ISSUES.

The petition after alleging the corporate capacity of the defendant and the fact that the plaintiff was engaged as a helper in operating a planer in the defendant's factory charges: ''That the said planer was defective and out of repair in this, to-wit: the shield which acts as a protection to the operator and helper was broken off and had been off for at least two months prior thereto; that said machine was so defectively constructed and out of repair that it would clog up when used in planing short, thin lumber, which condition of said machinery was unknown to plaintiff;'' that on the day of the accident by reason of its defective condition, the planer became clogged up with the short, thin lumber, and it was the duty of the plaintiff, in the exercise of his employment, to clean out the same; that in doing so plaintiff, in the exercise of ordinary care and with no fault on his part, took hold of a piece of lumber, and by reason of the defective condition of said planer and the absence of the aforesaid shield, plaintiff's left hand came in contact with the said planer, and was greatly injured.

The negligence charged in the petition is: ''First, that defendant was careless and negligent in furnishing plaintiff with machinery which was, on December 31, 1901, and had been for a long time prior thereto, in a dangerous and defective condition, as hereinbefore stated, which defects were known, or by the exercise of ordinary care might have been known, to defendant. Second, that defendant was negligent and careless in not warning plaintiff of the danger in connection with said work and said defective machine, knowing plaintiff to be inexperienced in such work, and that plaintiff did

193 Sup—46

not know of said defect in said machinery. Plaintiff says that he is not able to state more definitely or with more certainty than is hereinbefore stated, the defective condition of said planer or the time, place and circumstances, when, where and how he received the said injuries.'' The petition then sets out the nature and character of the injuries received, and asks judgment for $10,000.

The answer is a general denial, coupled with a plea of contributory negligence and assumption of risks. The reply is a general denial.

The case made is this:

About the 1st of December, 1901, the plaintiff entered into the employment of the defendant and worked in the yard handling lumber. Two or three days before the date of the accident he was assigned to duty as helper to the operator who was running the planer, his duties being to carry off the lumber from the machine and to help clean it out when it got clogged. The planer could be so adjusted as to plane lumber varying in thickness from three-eighths of an inch to six inches. During the time the plaintiff was engaged as such helper the machine clogged quite frequently. Two or three times the plaintiff and the operator stopped the planer to clean it out. At other times they cleaned it while it was running. No instructions had been given to the plaintiff or the operator as to stopping or not stopping the machine when unclogging or cleaning it. That was a matter that was left entirely to the discretion and judgment of the operators and they stopped it or not as they chose and as they deemed best. Plaintiff thus describes the planer, and for the purposes of this case the description will be accepted as correct: ''The planer was about hip high. At the front of the planer there was a pair of rollers, one above the other, to lift the boards into the machine. A little further back was another pair of rollers to start the boards under the knives —then the knives. There was a space of eighteen inch-

es between the knives and another pair of rollers at the back end of the planer. In this eighteen-inch space there was an iron bar, called the presser-bar, crossing the planer. The presser-bar did not in any way inter-fere with anyone working about the machine as plaintiff was when injured. From the presser-bar to the back rollers there was a space of from six to eight inches. The back rollers carried off the finished boards to the plaintiff, who bore them to their place in the factory. The planer was constructed with a shield made of cast iron, oval in shape to conform to the shape of the top roller, and fitted down over the front part of the top of the back rollers. The shield was fastened to the roller so that when the roller was raised by a thick board passing under it, the shield raised with it. The shield came down over the front roller so that the lower edge of the shield nearly touched upon the boards as they passed between the back rollers, no matter what their thickness was." In addition to the foregoing description, it is only necessary to say that the presser-bar, which crossed the roller in the eighteen-inch space between the knives and the back roller and which was within six or eight inches from the back rollers, was simply a piece of round iron or steel, the purpose of which is not very definitely stated in the testimony, but the object of which could only have been to hold the board in place while passing through the machine so as to conduct it to the back rollers and to prevent it from rising out of the machine before it reached the back rollers. And further to say, that the shield that had formerly been over the back rollers extended to within a fraction of an inch of the board that passed through the back rollers and had a piece of leather at its lower end which touched the board as it passed through the roller. The knives were covered so as to prevent anyone working around the machine from coming in contact with them, and did not cause the accident in question, nor were they charged or shown to have been defective.

The gravamen of the negligence charged in the petition is the failure of the defendant to provide a shield over the back rollers and the failure to warn the plaintiff of the danger arising from the absence of such shield. Originally the machine had such a shield over the back rollers, but about two months prior to the accident it was broken and had not been replaced at the time of the accident. There is a sharp conflict in the evidence as to the purpose of the shield. The testimony for the plaintiff tends to show that the shield was intended to prevent the hand of the operator when placed in the eighteen-inch space, aforesaid, to take hold of a board or other obstruction that clogged the machine, from being carried into and crushed by the back rollers, and that this was its only purpose. On the other hand, the testimony for the defendant tends to show that the purpose of the shield was to sweep off the shavings that remained on the board and prevent them from scarring or scratching the planed or finished surface of the board as it passed through the back rollers. The planer was run by machinery and the machinery could be stopped or started by a lever attached to the planer and in close proximity to the operator, which would throw off the belt that ran the planer without stopping the running of the other machinery. As before stated, it was discretionary with the workmen whether they would stop the planer while unclogging it or whether they would unclog and clean it while it was running, and it was customary for the workmen to do the one or the other as they saw fit. The plaintiff had done the work both ways during the time he was so employed, but generally cleaned it out while it was running. Sometimes the machine would run quite a while without being clogged and at other times it would clog every few minutes. The defendant's foreman testified, and his testimony is uncontradicted in this regard, that whether it clogged or not depended largely upon the character of the lumber that was being planed, and somewhat upon the manner of

handling the machine. On the day of the accident the plaintiff and the operator were engaged in planing short, thin lumber about three-eights of an inch thick and from three and one-half to four feet long. It was what is called rough lumber. The machine became frequently clogged or choked that day. Some witnesses say it had choked every five, ten or fifteen minutes. About eleven o'clock on the morning of the accident the machine became clogged again. Without stopping the machine the plaintiff and the operator undertook to unclog it. They were engaged in so doing about five minutes and supposed they had unclogged it when the plaintiff discovered a board in the machine which had not passed out through the back rollers. The end of the board extended to within four or five inches of the back rollers. The plaintiff stood on the right hand side of the planer and the operator on the left. With his left hand the plaintiff reached into the space of four or five inches, aforesaid, between the end of the board and the back rollers, and between the presser and the back rollers, and took hold of the board and attempted to raise the end so as to take it out of the planer without having it pass through the back rollers, as he claims was his purpose. The evidence does not disclose whether he took hold of the end of the board or of the side of the board near the end. In the briefs of counsel for plaintiff it is stated that he took hold of the loose end of the board. In oral argument counsel stated that he took hold of the side of the board near its end. The materiality of the manner in which he so took hold of the board will appear later. Just as the plaintiff got hold of the board it started suddenly and rapidly toward the back rollers and carried plaintiff's hand into the rollers and injured it. The only evidence in the record as to the speed of the planer was that introduced by the defendant which showed that "the speed is eighty-five lineal feet per minute," that is, it would plane 85 feet of board per minute or about 15 inches per second.

The plaintiff was forty-five years of age and a man of ordinary intelligence. He had formerly worked in lumber yards, but had no experience with planers or machinery, although he had frequently seen them at work. He says he knew that if he put his hand in the rollers he would get hurt, but that he did not intend to place his hand where it would get hurt. He says he intended to put his hand in the six or eight inches of space between the presser and the rollers and to lift up the board and pull it out of the planer, and not for the purpose of pulling it through the back rollers. The plaintiff says he does not know what caused the board to start unless it was that as he raised it the knives got a little more hold on to the board and started it towards the back rollers and thus carried his hand between them.

Over the objection of the defendant the plaintiff was permitted to testify that the defendant did not warn him of the danger to be incurred by running or helping to operate the machine. There was some testimony to the effect that the lever did not always stop the running of the machine promptly, but no evidence that there was any other method of stopping the planer without stopping the machinery, and the undisputed evidence was that when the planer got too badly choked it was stopped and an attempt was made to clean it; and the evidence is further undisputed that, although the lever did not always stop the running of the planer immediately upon being applied and that it sometimes would make two or three revolutions before it stopped, still the evidence is uncontradicted that by the application of the lever and the throwing of the belt the planer would stop. Inasmuch as counsel differ as to whether the plaintiff took hold of the end of the board or the side of the board near the end, it is necessary to state fully all that is disclosed by the evidence in this regard. The testimony of the plaintiff was as follows: "I had reached over and took hold of this board to pull it out and just as I took hold of the board and started to raise

up the board, the board started in, drawing my hand between the rollers of the machine." Plaintiff's witness Elmer Trewell, the operator of the machine, testified as follows: "Q. Now, did you see Smith take hold of this piece of board that was stuck in the machine? A. Yes, sir." This is all Trewell said in reference to the manner in which plaintiff took hold of the board, and this is all the evidence in the record upon that question.

It is contended for the plaintiff that the evidence discloses that the plaintiff in putting his hand into the machine as aforesaid pursued the usual and customary manner of unclogging the machine that obtained in the defendant's factory. The evidence in reference to the manner in which the machine had previously been unclogged, as disclosed by the record, was as follows: The plaintiff testified: "Q. Now, you tell us you had been doing this before? A. Yes, sir. Q. How long had you been doing it? A. Two or three days." Trewell testified: "Q. Was it customary there to clean out the planer when it was running?" This was objected to. The objection was not passed upon and the question was not answered. He was then asked: "Q. What did you do about cleaning it out when running?" This was objected to and the court said: "You can ask him whether it was running or standing still." The plaintiff then asked: "Q. You say it was running when you cleaned it out? A. Yes, sir. Q. Every time that morning? A. I think so, but I do not remember whether I stopped it at any time or not, but I do not think I did." He further testified: "Q. Did you see Smith take hold of this piece of board that was stuck in the machine? A. Yes, sir. Q. Did you have it all cleaned out except that? A. I think so. We thought it was all cleaned out when he found this board. Q. And that piece when he took hold of it drew his hand into the rollers? A. Yes, sir. Q. How long had you been cleaning it, this machine, in that way? A. Ever since

we had been running it; all the time.'' He further tes-
tified: ''Q. There were other times when you at-
tempted to clean it out while it was running? A.
Yes, sir. Q. Now, you never stopped it? A. Yes, sir; I
have stopped it lots of 'times. Q. For what purpose?
A. To oil it or fix it or do anything around it. Q. Did
you ever stop it to get it cleaned out when it was chok-
ed up? A. Once in awhile, but not often. Q. Did you
ever do it? A. Yes, sir. I have stopped it. Q. To clean
it? A. Yes, sir. Q. When you stopped it to clean it
you cleaned it with your hands? A. Yes, sir. Q. Some-
times cleaned it while it was running with your hands?
A. Yes, sir. I have cleaned it many times with my hands
while it was running. Q. So the question of whether the
machine would be stopped to clean it or whether or not
you would clean it while it was running was a question
that you decided? A. Yes, sir. Q. The workmen de-
cide that? A. Yes, sir. Q. If you thought you ought
to stop it before you cleaned it with your hands, it was
your right to do so? A. Yes, sir. Q. And you would
do so? A. How is that? Q. Whenever you found it
was choked up so you thought it ought to be stopped
to clean it you did so? A. Whenever it was choked
up so I could not clean it any other way. Q. But you,
yourself, determined the question whether it should be
stopped or not? A. I used my own judgment about
that.'' On being recalled the plaintiff testified as fol-
lows: ''Q. Mr. Smith, when this machine would some-
times be clogged up you would use a stick to unclog it?
A. Sometimes when it was under the rollers so tight
that we could not pull it out we would push it on the
other side to the other man to get hold of it. Q. Why
did you use a stick? A. Because we could not reach
it with the hand. Q. If it was close enough you would
do it with your hand and it was safe enough? A. Cer-
tainly. Q. Why didn't you use a stick when it was close
to you? A. Because I could not get hold of it. Q. Is
that the only reason why? A. Certainly. Q. Your

deposition was taken in this case at one time, wasn't it?
A. Yes, sir. Q. Was this question asked you in your
deposition: 'Q. When was it you used a stick? A.
Sometimes we would use a stick when the stuff would be
broken up and piled between the middle rollers of the
machine and then we would have to take our hands and
reach over there and pull it out.' Q. Did you say that?
A. Yes, sir."

Kline, a witness for plaintiff, testified as follows:
"Q. When it clogged up what would you do? A. Clean
it out—take our hands and clean it out. Q. I will ask
you what you did when you found it clogged up? A.
Why, we cleaned it out. Q. Tell how you cleaned it
out. A. With our hands—pulled the sticks out. Q.
Was the machine at these times running or stopped?
A. Well, it was running most of the time."

Trewell testified on cross-examination as follows:
"Q. Had you been in the habit during the time you
were operating this machine of putting in your hand
and pulling out the choke-up? A. Yes, sir. Q. That
had been your habit and practice always? A. Yes,
sir."

At the close of plaintiff's case and again at the
close of the whole case, the defendant demurred to the
evidence. The court overruled the demurrer, and the
defendant excepted, and that ruling is now assigned as
the chief error.

At the request of the plaintiff the court instructed
the jury that if the machine was defectively constructed
and out of repair and dangerous, in that, it would clog
up and require cleaning out, and that in the absence of
the shield spoken of in the evidence it was liable to catch
the hand of the person so cleaning it out and injure
him, and that the defendant knew, or by the exercise of
ordinary care could have known, of such defect and
danger, then the plaintiff was entitled to recover unless
he was himself guilty of negligence, or that he assumed
the risk of doing the work as defined in the other in-

structions. The court also instructed the jury upon what constituted negligence and upon the assumption of risks. In addition to the demurrers to the evidence, the defendant asked the court to instruct the jury that if the plaintiff had the option to turn the lever and stop the machine before undertaking to remove the piece of board that clogged the machine, and did not do so, then he could not recover. The court refused the instruction in this form, but modified it by saying that if he negligently failed to do so he could not recover, and gave it in the modified form. The defendant further asked the court to instruct the jury that if the plaintiff put his hand between the pieces of machinery and near the rollers while they were in full operation and with full knowledge of what he was doing and of the surrounding conditions, and that the same was a dangerous thing to do, and that injury might have reasonably been expected to result from such act, then their verdict should be for the defendant. This instruction the court refused to give.

Although the petition assigned as negligence the inexperience of the plaintiff and the failure of the defendant to warn the plaintiff of the dangers to be apprehended, and the failure to instruct him how to operate the planer, and although over the defendant's objection the plaintiff was permitted to show that the defendant had not instructed the plaintiff as aforesaid, the plaintiff did not ask any instruction and the court did not instruct the jury on this feature of the case. As before stated, the plaintiff recovered a judgment for $7,000, and, after proper steps, the defendant appealed.

## I.

The second ground of negligence assigned by the plaintiff is the failure of the defendant to notify the plaintiff of the danger incident to the operation of the planer. As hereinbefore noted, this feature of the case was not submitted to the jury at all, and except for the

fact that the evidence offered by the plaintiff in support of this allegation of negligence was admitted by the court over the objection of the defendant, and except for the further fact that in oral argument and in brief plaintiff's counsel now lay great stress upon what they designate as the crankiness of the planer in its erratic way of suddenly impelling a board to pass through it and shooting unexpectedly toward the back rollers, which constituted a hidden danger that was not known to the plaintiff and which is now said to be the proximate cause of the injury, or at least one of the proximate causes of the injury, it would not be necessary to further consider this assignment of negligence.

The crankiness of the machine and its propensity to suddenly shoot a plank toward the back rollers is not charged in the petition as a defect in the machine, nor was it made an issue in the pleading. The sole defect alleged in the petition was the absence of the shield aforesaid. The case was put to the jury by the instructions of the plaintiff solely upon the ground that the defect in the machinery consisted in the fact that it would clog up and required cleaning and that in the absence of the shield it was liable to catch the hand of a person and injure him. The argument now made that the crankiness of the machine is the proximate cause, or one of the proximate causes, of the injury, cannot be allowed to avail the plaintiff in this court, for neither by petition nor by instruction was any such theory submitted to or tried in the lower court. The same is true as to the second ground of negligence alleged in the petition, for there the warning, which it was alleged the defendant failed to give the plaintiff, referred solely to "said defective machine," and the petition contained no averment of any other defect than the absence of the shield. This contention, therefore, need not be further referred to, and the failure to warn the plaintiff need only be considered with reference to the dangers to be apprehended from the failure to have the shield

over the back roller. It is true the plaintiff had no prior experience in the operation of machinery, but he was a man forty-five years of age and possessed of ordinary intelligence. He was certain that if he put his hand into the machine so that it would come in contact with the back rollers the result would be that he would be hurt. Whether he made this admission or not, the danger resulting from allowing one's hand to come in contact with those rollers was perfectly obvious and it needed no warning to advise the plaintiff, or any one of ordinary common sense, of such danger. The plaintiff saw when he first began to work on the planer that it had no shield over the back rollers. He also saw and knew that the board in passing through the planer passed under the presser-bar and through the back rollers. The presser-bar was within six or eight inches of the back rollers. The speed of the planer was fifteen inches per second. At the time of the accident it was running at full speed. There was a space of about five inches between the end of the board and the back rollers. The plaintiff put his hand into the space between the presser-bar and the back rollers while the machine was running at full speed, for the purpose, as he says, of lifting the board out of the planer, and not for the purpose of pulling it through the back rollers. Whether he took hold of the end of the board, as his counsel state in the brief, or the side of the board near the end, as counsel state in oral argument, the fact remains that it needed no warning from anyone to tell him that if the knives engaged the plank it would drive the plank the distance of five to eight inches and against or between the back rollers in about one-half of a second. No warning that could have been given by anyone could have served to instruct any man of the danger of so doing any more effectually than the object lesson presented to the eye of the plaintiff at the time he put his hand into the planer.

The fact that other operatives and the plaintiff had

previously so done did not in any way make the act any the less a negligent act, and it is inconceivable that any man possessed of ordinary intelligence would have attempted to do such a thing. Moreover, while there is evidence that the customary way of cleaning the machine when it was clogged was to put the hand in this eighteen-inch space and take out the shavings or sticks therein that clogged the machine, nevertheless there is absolutely no evidence in the case that anyone had ever before placed his hand in the space between the presser and the back rollers for the purpose of taking hold of a board that was clogged there and attempting to lift it out of the planer without having it pass through the back rollers. It is manifest that there is a great difference between taking hold of shavings or sticks that were in that space and taking hold of a plank that was in that space. Shavings or sticks could not be propelled forward by the movement of the knives, for the knives did not engage or touch them, whereas when a plank was caught between the knives, the instant the obstruction was removed the knives would force the plank forward. In short, the custom to which the evidence relates does not cover conditions such as are here presented, and even if a negligent custom could be accepted as a good excuse, no such negligent custom is shown in this cause as to taking hold of boards. As was well and aptly said by Brace, J., speaking for this court, in Doerr v. Brewing Assn., 176 Mo. l. c. 556: "That pit was a dangerous place for a human arm to be in at any time while the shaft was in motion, whether moving at the rate of one revolution every one, two or three seconds. No man has the moral or legal right to put his life or limb to the hazard of a second, unless duty and the exigencies of his situation imperatively demand it. No man of ordinary prudence will do so. There was no such demand in this instance. The plaintiff was a man of mature years. He had been oiling this machine for four months. He knew the danger of

thrusting his arm into this pit, when the shaft was in motion. The risk was manifest, the danger imminent. The discharge of no duty within the scope of his employment called for the assumption of such risk. The recovery of the funnel was a matter of little or no importance, and could have been easily effected without incurring risk. The fact that the plaintiff had before this accomplished the feat of recovering the funnel by hand when the shaft was in motion, or that others may have done so, affords no excuse for his action, nor furnishes any reason for charging his employer with the consequences of his folly. Hence, conceding that the marvelous instantaneous acceleration of the speed of the shaft took place as testified to by the plaintiff, this eccentric movement could at most have been no more than a cause contributing with his own negligence and want of ordinary care to his injury. The court erred in refusing to sustain the demurrer to the evidence, and for this error the judgment will be reversed."

What is there said applies with full force to the case at bar; the only difference between the two cases being that in the one instance the man had had four months experience, while in the case at bar he had only three days experience, which considering the obvious character of the danger to be incurred and the fact that such danger was imminent, makes the difference in the experience of the operatives in the two cases wholly immaterial.

The case at bar also falls within the principles announced in George v. Manufacturing Co., 159 Mo. 333, where it was said: "The machine was in perfect running order; reasonably safe of its character, for the purposes for which it was being used. The plaintiff was familiar with its construction and operation. He was furnished a safe place for the discharge of the duties of his employment in connection with the machine. In the discharge of those duties with ordinary care it at no time became necessary that his arm should be

placed in dangerous proximity to the edge of the rapidly revolving knives from which he received the injury. Even if the holes into which the shavings fell did become clogged, they could have been easily removed with ordinary care without exposing plaintiff to any risk of injury. The use of a longer stick even for the purpose of punching the shavings through the hole would have obviated any possible danger on this occasion. It is so evident upon the face of the plaintiff's own statement that his misfortune was the result of his own want of care and of no failure upon the part of his employer to discharge any of its duties to him, that argument in the case would be superfluous.''

And in Nugent v. Milling Co., 131 Mo. l. c. 256, a case very analogous to the case at bar, it was held that the failure of a master to instruct his servant as to the danger of a machine which was obvious does not constitute negligence, the court saying: ''He knew as well as any one connected with the mill that if his hands came in contact with the revolving cylinders they would be crushed to pieces, and it is a matter of no concern that he was not so informed by the manager of defendant's mill. Whatever there was of danger or risk he could see and appreciate as well as any one, and as it was known to him he was as legally responsible for his own protection as was the foreman in charge of the mill for his protection—he needed no special instruction as to the danger.''

Plaintiff admits that he knew if his hand came in contact with the rollers it would be injured. His only excuse for putting his hand into that small space between the presser and the back rollers is that he did not intend to put his hand where it would come in contact with the back rollers. But any man of ordinary intelligence would know that if he did so, the danger of injury was imminent, for the danger was obvious. Such an act itself suggests the inevitable consequences. If he took hold of the end of the board and the board start-

ed with the speed of the planer, his hand would be hurt whether there was a shield on the back roller or not, for whilst with the shield the hand would not be carried between the rollers, possibly, still his hand would be crushed between the end of the board and the shield. If he took hold of the side of the board near the end, and there was only eight inches of space between the presser and the back rollers, he would have taken hold of the side of the board within eight inches of the back rollers, and he must have known that when the plank was propelled forward by the knives, his hand would come in contact with the shield if there was a shield or with the back rollers if there was no shield. Having hold of the side of the plank, the effect might have been to break his hold on the plank and loosen his hand from the plank, and thus his injury would not have been as serious as if he had had hold of the end of the board, but in either event some injury would have ensued. And, therefore, whether he had hold of the end of the plank or the side of it, the injury to be apprehended was certain and the extent only one of degree.

This, therefore, is not a case where the master can be adjudged guilty of negligence in not having warned the servant of the dangers to be incurred, for such dangers were perfectly obvious and imminent.

## II.

The plaintiff says he intended to take hold of the plank and lift it out of the planer and not to pull it through the back rollers. How this could have been accomplished surpasses comprehension. The plank was three-eighths of an inch in thickness and three and one-half to four feet long. The distance the plank was below the top of the planer does not accurately appear from the evidence, but at any rate it was lower than the top of the planer, for it was intended to pass under the presser and between the back rollers. Upon the principles of applied mechanics it is impossible to conceive

that any one of even the most ordinary intelligence could have expected to take hold of the end of the plank between the presser and the back rollers where only eight inches of the plank at most was exposed, and lift it out of the planer. A plank of the length described and three-eighths of an inch in thickness could not be bent by hand in that way, but whether it could or could not have been accomplished, the danger of attempting so to do was perfectly obvious, and it was negligence for the plaintiff to attempt to do so.

## III.

The evidence clearly shows that the plaintiff could have stopped the planer by merely throwing the lever, which was provided for that purpose and was easily within reach, and could have thus safely unclogged or cleaned the machine while it was at rest. Instead of so doing he undertook to unclog it while it was in motion.

In Moore v. Railroad, 146 Mo. l. c. 582, this court quoted with approval the rule laid down in Bailey on Personal Injuries Relating to Master and Servant, vol. 1, sec. 1121, where it is said: "It is a familiar principle, which common sense as well as the rules of law ought to teach any one, that where an employee of a railroad knowingly selects a dangerous way when a safer one is apparent to him, and is thereby injured, he is guilty of contributory negligence."

And in section 1123 the same authority says: "Where a person having a choice of two ways, one of which is perfectly safe, and the other of which is subject to risks and dangers, voluntarily chooses the latter and is injured, he is guilty of contributory negligence and cannot recover."

The plaintiff here selected an obviously dangerous method when a perfectly safe one was available to him, and when it was a matter entirely for his determination which course he would adopt, and must be held to the consequences of his own act.

193 Sup.—47

## IV.

The plaintiff, however, contends that this case falls within the rule prescribed by section 6433, Revised Statutes 1899. That section is as follows: "The belting, shafting, gearing and drums in all manufacturing, mechanical and other establishments in this State, when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, shall be safely and securely guarded when possible; if not possible, then notice of its danger shall be conspicuously posted in such establishments."

In Lore v. American Manufacturing Co., 160 Mo. 608, it was held that it was not necessary for a pleader to invoke the aid of the statute by any special reference thereto, but that it is sufficient to state the facts which bring his case clearly within the law; and that case correctly stated the rule of law. But the most casual reading of the statute demonstrates that it has no application whatever to the case at bar. The statute is confined to belting, shafting gearing and drums in manufacturing establishments. Neither the allegations of the petition nor the evidence in this case bring this case within the letter or spirit of the statute. The injury complained of was not caused by any belting, shafting, gearing or drums of the machine. And there is nothing in the case to show whether or not those features of the establishment were or were not properly safeguarded as the statute requires. The statute does not, either in letter or spirit, cover a case like the case at bar, and especially does not require rollers of a planer to have a shield or guard to prevent the hand of an operative from being injured by being thrust into it when the operative had taken hold of an obstruction in the planer as the plaintiff did in this case. Moreover, as hereinbefore pointed out, the plaintiff's hand would necessarily have been injured in some degree even if there had been a shield over the back rollers.

## V.

The remaining negligence of the defendant complained of is that originally there was a shield in front of the back rollers, which had been broken off about two months before the accident, and that in consequence thereof the machine was defective, and that the plaintiff did not know of such defect, and in consequence of the defect was injured.

The shield was broken off at the time the plaintiff was assigned to duty as helper. The fact that there was no such shield was obvious to the plaintiff, and he admits that he knew there was no shield there during the time he worked with the planer. As before pointed out, if there had been a shield there the plaintiff would have been necessarily injured in some degree, perhaps less than if there was no shield; but whether the shield was originally intended to prevent the hand of the operator from coming in contact with the back rollers, as the plaintiff's testimony tends to show, or whether its purpose was to sweep off the shavings from the board and prevent them from marring the planed surface of the board, as the defendant's testimony tends to show was the purpose of the shield, is not for this court to decide, nor is it at all material to the ultimate determination of this case. The fact that being without a shield made it more dangerous to put a hand into the space between the presser and the back rollers was a fact which was obvious to the plaintiff, and, therefore, if it was negligence for the master not to have such a shield, it was equally contributory negligence for the servant to so place his hand in that space when there was no shield. So that the absence of the shield cuts both ways. Upon the whole case, it is plain that even if there had been a shield over the back rollers the plaintiff would have been injured in some degree by placing his hand in the space between the presser and the back rollers while the machine was in motion, and the fact that others had

placed their hands in that space for the purpose of taking out shavings and sticks was no excuse for the plaintiff or such others to do so, and especially was no excuse for the plaintiff so to do in order to raise the board out of the planer as he said he expected to do.

Upon the case made, therefore, whether considered from the standpoint of the plaintiff or of the defendant, the conclusion is irresistible that no case of actionable negligence has been made out against the defendant, but that the plaintiff's misfortune must be attributed solely to his own negligence.

For these reasons the judgment of the circuit court is reversed.

*Brace, C. J., Gantt, Burgess, Fox* and *Lamm, JJ.,* concur; *Valliant, J.,* dissents.