# WILLIAM F. SCHERER v. HARRIET BRYANT and JOHN BRYANT, Appellants.

### Division One, March 4, 1918.

1. **NEGLIGENCE: Foreseen Injury.** An act is negligent when in the circumstances some injury to some one reasonably may be foreseen as a reasonable consequence; it is not necessary to constitute the act negligent that the particular injury must have been such as could have been foreseen.

2. ———: ———: **Question for Jury.** Where the evidence is not such that all reasonable minds would agree that no negligence was shown, the question of whether a reasonable man ought to have foreseen the injury to an employee engaged in banding an armature with wire, upon the sudden starting of the engine and a failure to stop upon signal, as promised, is for the jury.

3. ———: **Contributory Negligence: Anticipating Injury: Question for Jury.** The question of contributory negligence is ordinarily one for the jury; and whether the employee, engaged in feeding a wire coiled about his arm into a clamp, by which it was held taut as it was wound on to an armature, revolved by an engine, was negligent in not grasping in time to save himself the fact that his call for the engine to be stopped would or could not be heeded, as had been promised by the engineers and not done, is a question for the jury.

4. ———: ———: **Sudden Danger: Confusion: Question for Jury.** Whether the sudden application of power to the engine, contrary to the promise of the engineer, was sufficient to arouse inconsiderate action on the part of an employee who was feeding a wire coiled about his arm into the clamp of a machine operated by the engine, and whether apprehensions that if he dropped the wire it would in its whirling motions injure another person standing near the clamp, and whether or not he was justified by such aroused perturbations and apprehensions in holding onto the wire until it was too late to disengage it from his arm before his fingers

were drawn into the machine, and thereby relieved of the charge of contributory negligence in holding on to the wire after the danger became apparent, were questions for the jury.

5. ———: Change of Masters: Wrong Defendant: Respondeat Superior. An electrical company had been engaged to repair machinery used to generate electricity for defendants' building, and sent plaintiff and its foreman to do the electrical work, which was to band with wire an armature fixed upon an extension of a draft-wheel shaft of an engine. The wire was attached to the armature and it was essential that it be drawn very tight, and hence it was passed through a clamp fixed near by to give the necessary tension. Plaintiff's duty was to keep the wire straight and feed it into the clamp. The engineers promised that they could and would revolve the armature slowly and stop it upon signal, but did neither, but suddenly applied the power and revolved it rapidly, and plaintiff's fingers were drawn against the clamp and severed. It was necessary to operate the engine in banding the armature, and the engine belonged to defendants and they furnished the engineers, who were in their general employment, and instructed them to operate the engine as they were directed by the electrical company's employees. *Held*, that these facts fail to establish conclusively that the engineers had changed masters, and the question of whether the defendants were liable for the engineers' negligence was one for the jury.

Appeal from Jackson Circuit Court.—*Hon. William Q. Thomas,* Judge.

AFFIRMED AND REMANDED.

*Harding, Murphy & Harris* for appellants.

(1) There was no evidence that the engineers were negligent. Therefore the trial court was right when it directed a verdict for the defendant, and was wrong when it sustained the motion for new trial. Breweries Co. v. Talbot, 141 Mo. 674; Weesen v. Railway, 175 Mo. App. 374; Fink v. Railroad, 161 Mo. App. 314; Cogan v. Railroad, 101 Mo. App. 179; Press v. Penny, 424 Mo. 98; Dean v. Railroad, 199 Mo. 386. (2) Although the general servants of defendant Bryant, the engineers were at the time of the accident the servants of the R. W. Hodge Electric Company, and were therefore, plaintiff's fellow servants, and therefore the demurrer to plaintiff's evidence was properly

sustained and the trial court erred in sustaining plaintiff's motion for new trial. Garvin v. Railway, 100 Mo. App. 617; Healy v. Range Co., 161 Mo. App. 483; Rourke v. Collier Co., 2 C. P. Div. (L. R.) 205; Dunavan v. Laing W. & D. Const. Co., 1 Q. B. Div. 629; Hillsdorf v. St. Louis, 45 Mo. 94; Smith v. Railway, 85 Mo. 418; Breslin v. Sparks, 89 N. Y. Supp. 627; Cunningham v. Imp. Co., 46 N. Y. S. 954; Railway v. Manning, 146 S. W. 227; Oil Co. v. Anderson, 212 U. S. 218; Wolf v. Safe Co., 124 N. Y. S. 541; Worth v. Signal Co., 121 N. Y. S. 66; Brady v. Railway, 114 Fed. 100; The Elton, 142 Fed. 367; Parsons on Contracts, p. 114; 2 Cooley on Torts, p. 1007; Atwood v. Railway, 72 Fed. 455; Kane v. Const. Co., 202 Mass. 237; Higgins v. Tel. Co., 156 N. Y. 75; Powell v. Const. Co., 88 Tenn. 692; Byrne v. Railway, 61 Fed. 605. (3) The plaintiff was guilty of contributory negligence as a matter of law, and therefore the court's action in directing a verdict for the defendant at the close of plaintiff's testimony was right, and therefore in sustaining the motion for new trial court was wrong. Collett v. Kuhlman, 243 Mo. 585; Hecker v. Railway, 110 Mo. App. 162; Schiller v. Breweries Co., 156 Mo. App. 569.

*James H. Harkless, Samuel M. Carmean* and *Charles L. Dort* for respondent.

(1) The weight and sufficiency of the evidence on the question of contributory negligence are for the jury. State v. Chick, 146 Mo. 645; Railey v. Railway, 133 Mo. App. 473; Peck v. Traction Co., 131 Mo. App. 134. The inferences to be deduced from the facts in evidence are for the jury. Chouquette v. Barada, 28 Mo. 491; Primm v. Haren, 27 Mo. 205; Hutchinson v. Gate Co., 247 Mo. 71. The proximate cause of the injury was the negligent manner in which the engine was started and operated, and the failure of the engineers to perform the duties they had assumed, to run in the manner agreed and to stop at once upon signal. There is no evidence that plaintiff was guilty of any act which directly contributed to his injury.

Contributory negligence is a matter of defence. If there could be but one inference drawn from the evidence, the case might be for the court, but the case is for the jury where the facts admit of different constructions or inferences. Powers v. Transit Co., 202 Mo. 267; Berry v. Railroad, 124 Mo. 223. Where men of reasonable minds might draw different conclusions from the evidence the case is for the jury. Baird v. Railway, 146 Mo. 265; Huth v. Dohl, 76 Mo. App. 676; Young v. Stevens, 66 Mo. App. 222; Voegeli v. Marble Co., 56 Mo. App. 485. A mixed question of law and fact is for the jury. Marshall v. Schrecker, 63 Mo. 308; O'Reilly v. Miller, 52 Mo. 210. When facts proved without dispute require the exercise of reason and judgment, so that one reasonable mind may infer that a controlling fact exists and another that it does not exist, there is a question of fact. Tousey v. Hastings, 194 N.Y. 79; Hirsch v. Jones, 191 N. Y. 195; In re Totten, 179 N. Y. 112. Where a person is injured as the result of an act done by him under an impulse or on a belief created by a sudden danger, he is not regarded as guilty of contributory negligence, even though the act would be regarded as a negligent one if performed under circumstances not indicating sudden peril. 26 Cyc. 1274; Wilson v. United Rys., 181 S. W. (Mo.) 19. Nor is a servant chargeable with contributory negligence in adopting a method of work which is usual and customary. O'Mellin v. Elec. Ry. Co., 115 Mo. 205. (2) Under the evidence in the case there is a question for the jury as to whose servants the engineers were. Whether or not it was not contemplated by appellant to furnish the engineers? Whether or not it was necessary co-operation? Whether or not such co-operation expedited the work and benefited appellant? Plaintiff is entitled to every reasonable inference before a case can be taken from the jury. 38 Cyc. 1516 (55); Hallett v. Brewing Co., 129 App. Div. (N. Y.) 617; Chouquette v. Barada, 28 Mo. 491; Primm v. Harren, 27 Mo. 205. The questions of intent and control of servants in this case involve an issue determining the mental

attitude of appellant and are questions of the jury. Cox v. Knight, 49 Ala. 173; Bank v. Brewster, 30 Conn. 559; Murphy v. Murphy, 95 Iowa, 271; Teague v. Maddox, 150 U. S. 128; Rucker v. Bolles, 80 Fed. 504. Whether an act was done under particular orders is a question for the jury. Brakebill v. Leonard, 40 Ga. 60. That the furnishing of power may have been gratuitous has no bearing to change the relationship of the parties. The Lisnecrieve, 87 Fed. 571.

BLAIR, J.—This is an appeal from an order granting a new trial after a directed verdict in an action respondent brought for damages for injuries received while aiding in banding an armature owned by appellants. Respondent was experienced in work of this kind. His employer, the R. W. Hodge Electrical Company, was repairing machinery used to generate electrical current for appellants' building. The armature was fixed upon an extension of the drive-wheel shaft of an engine in the same room. Appellants' regular engineers operated the engine when necessary to operate it in the progress of the repairs.

It is contended (1) there is no evidence of negligence; (2) respondent was guilty of contributory negligence; and (3) appellants are not liable for the negligence, if any, of the engineers.

I. In banding the armature it was essential that the wire be drawn very tight. It was first attached to the armature and then passed through a clamp fixed near by and designed to give the necessary tension. Respondent's duty was to "guide" the wire.

Jury Question. This was necessary. He took the ten or twelve-pound loop or coil of wire and unwound ten or twelve feet of it, letting this loose wire lie upon the floor. He then stepped back thirty or thirty-five feet from the clamp and placed the coil upon his arms. In this situation the operation of the engine would cause the armature to revolve, the wire to be wrapped about it and the wire to be drawn through the clamp. As soon as the slack wire was drawn through the clamp

the wire would commence to be drawn from the coil upon respondent's arm, and he could, if the movement were sufficiently slow, "guide" the wire, permitting it to unwind from the coil and keeping it straight and untangled as it passed through the clamp. On a previous occasion the engineers had shown they could so operate the engine as to revolve the armature a few inches and then stop it immediately. Respondent saw this done. When the banding of the armature was about to begin they were asked if they could so operate it as "just to turn it over." They said they could, and that they would; that they would run it as slowly as they could. They also said they could stop it immediately on signal and would do so. With respondent in the position mentioned, the signal to start the engine was given by respondent or his foreman. It was started suddenly and the armature commenced to revolve somewhat rapidly, taking up thirteen or fourteen feet of wire at each revolution. Respondent almost at once called to the engineers to stop the engine. This was not done until the armature had made several revolutions. Respondent, as the wire was drawn rapidly through the clamp, having called for the stop, approached the clamp, the coil of wire still upon his arms. It is a fair inference he could not unroll the wire as rapidly as it was being drawn through the clamp. When within a few feet of the clamp respondent perceived the stop was not going to be made and endeavored to disengage his hands from the coil. He was unable to do so in time, and his hands were drawn against the clamp and his fingers severed by the wire drawing them against the clamp and cutting through them. The sudden starting of the engine was due to the fact that when the start was made, the engine happened to be "on center" and considerably more than the usual power was necessary to put it in motion. Respondent was not aware of this. The engineers were. The failure to stop more quickly was due to the speed at which the engine was started and the shutting off of the steam so that the engine could not be reversed.

This is the tendency of the evidence, viewed from respondent's standpoint.

It is true, except in cases of wanton wrong, there is no negligence if no reasonable man could have foreseen any injury from the act done. But it is not true that the particular injury must have been such it could have been foreseen. An act is negligent when in the circumstances some injury to some one reasonably may be foreseen as a reasonable consequence. This being shown, liability attaches ''for anything which, after the injury is complete, appears to have been a natural and probable consequence.'' [Benton v. St. Louis, 248 Mo. l. c. 110, and cases cited.]

Whether a reasonable man ought to have foreseen injury to respondent upon a sudden starting of the engine and a failure to stop on signal, as promised, was a question for the jury in this case. That respondent would be drawn into the clamp unless he rid himself of the heavy coil of wire in time was a certainty. Whether, in view of the promise to stop, he would rely upon that promise too long, as he did, or would see his danger in time, as he did not, and, being rapidly drawn toward the clamp, would be injured by it is, in our opinion, not to be settled as a matter of law on this record. It is clear the fact the engine happened to be on ''center'' when the start was made does not excuse a start more sudden, a speed more swift and a stop less prompt than was promised. If a particular condition made necessary a variation from the directions given and agreed to be followed, respondent or his foreman should have been advised of it otherwise than by suddenly starting the engine at rapid speed.

The evidence cannot be said to be such that all reasonable minds would agree no negligence is shown.

II. Appellants cite decisions holding that when a plaintiff's contributory negligence conclusively appears from his own evidence, he must fail. The rule is well established. This case is not of that class. The ques-

Contributory
Negligence.
tion of contributory negligence is ordina-
rily for the jury. Whether respondent was
negligent in not grasping in time to save
himself the fact that his call for the engine to be stop-
ped would or could not be heeded, the promise to stop
having been given him, is clearly a question for the
jury. The sudden application of the power and the
swift winding of the wire coiled about respondent's
arms also justify a finding of a condition of sudden
danger tending to excuse inconsiderate action on re-
spondent's part. What apprehensions justly were
aroused as to the result of dropping a heavy coil of
strong wire, to be whirled toward the clamp at or near
which Krebs was standing, a jury can best decide. The
question of contributory negligence was one of fact.

III. The final contention is that though the
engineers were in the general employ of appellants, yet
at the time of the injury and in respect of the act caus-
ing it they were the servants of the R. W. Hodge Com-
pany. If it be true that in doing the act complained
of the engineers were not acting as appellants' servants,
respondent has no cause of action. This contention
presents the question whether there was any substan-
tial evidence tending to show that in starting the engine
the engineers acted as appellants' servants. In a much
cited case (Rourke v. Moss Colliery Co., 2 C. P. Div.
(L. R.) l. c. 209) it was said: "But when one person
lends his servant to another for a particular employ-
ment, the servant for anything done in that particular
employment must be dealt with as the servant of the
man to whom he is lent, although he remains the
general servant of the person who lent him." It is
this principle appellants invoke.

The evidence tends to show that the Hodge Com-
pany, acting upon an order to repair the generator,
sent respondent and Krebs, his foreman, to do the
electrical work; that company furnished its employees
to do the electrical work, but furnished no one to run
the steam engines and "had nothing to do with that;"

that it was necessary to operate the engine in banding an armature like that mentioned in this case; that the engineers were in the general employ of appellants, their general duties being to operate the engines in the building, including the engine to which the armature was attached; that appellants' agent in charge of the building instructed the engineers to operate the engine, in case the employees of the Hodge Company requested them to do so, and to operate them as such employees directed; that the engineers were instructed by appellants' agent to operate the engines as they would or might be directed; that they were on that day in the employ of appellants and paid by them.

It is undisputed the engineers were in the general service of appellants; that they hired them, paid them and could discharge them. It is apparent the evidence would support a finding that the Hodge Company had no power to discharge the engineers from appellants' general employment, nor yet to substitute for them other persons to run the engine in banding the armature; that the details of the operation of the engine were to be left to the engineers, and that the directions the employees of the Hodge Company were authorized to give were only as to the time when the engines were to be run and not as to the manner or method of running them; that the Hodge Company was employed merely to do the electrical work and that in directing the use of its engines to revolve the armature, if appropriate to the work of banding it, appellants were furnishing needed power which might have been otherwise furnished at greater expense; that the operation of the engines was as much in the interest of appellants as of the Hodge Company.

It is said the principal test of the relationship of master and servant is control. In a case like this it is necessary carefully to "distinguish between authoritative direction and control and mere suggestion as to details or the necessary co-operation, where the work furnished is part of a larger undertaking." [Standard Oil Co. v. Anderson, 212 U. S. 1. c. 222.] In the same case it is pointed out that one is not lifted out of his

general employment and set down in the service of another by the mere fact that such other is authorized by the general master to indicate the work to be done or to furnish information or give signals calling the servant into activity. In Hurlbut v. Wabash Ry. Co., 130 Mo. 657, the holding is of like effect. In this ‘case, as in Coggin v. Railroad, 62 Ga. 1. c. 692, there is no evidence that any one other than the engineer "interfered or had a right to interfere with the application of steam, or with manipulating the engine. These were for the engineer as an expert—as a craftsman skilled in his business. Certainly, to say the most, the connection of the two was not closer than that of pilot . . . and engineer . . .; and if so, the actual handling of the engine was exclusively for the engineer."

The evidence fails to establish conclusively that the engineers had changed masters. The question is usually one for the jury and is so in this case. The cases cited announce no rule which would warrant the taking of this question away from the jury.

The order is affirmed and the cause remanded. All concur except *Bond, P. J.*, absent.