J. A. WILLS v. RICHARD BELGER, Doing Business as BELGER CARTAGE SERVICE, Appellant.—No. 40587.—212 S. W. (2d) 736.

Division One, June 14, 1948.

Rehearing Denied, July 12, 1948.

1178

*Frank J. Rogers* and *Cooper, Neel, Sutherland & Rogers* for appellant.

·*William S. Hogsett, Alvin C. Trippe, Hale Houts* and *Hogsett, Trippe, Depping & Houts* for respondent.

[737] DALTON, C.—Action for damages for personal injuries occasioned by the alleged negligence of defendant in the operation of a delivery truck. The action is based upon the theory that defendant is liable on the doctrine of respondeat superior, while defendant contends he had surrendered full control of his servant to a third party. The jury returned a verdict against defendant for $12,500 upon which judgment was entered. Defendant has appealed.

Plaintiff-respondent was employed by the Morgan Grocery Company of Kansas City, Missouri, as a truck driver to deliver groceries. On February 26, 1946, the truck which he ordinarily used was in the shop for repairs, and his employer (hereinafter referred to as Morgan) secured a truck and driver from appellant for the purpose of making deliveries. The truck was a one and one-half ton truck, with open bed and flared sides. It was loaded with groceries at Morgan's place, and, since the driver did not know the city streets, nor the route, respondent was directed to accompany him to collect for and help deliver the groceries and to tell the driver where to go. Respondent, at the direction of his employer, stood on a sack of flour on the tail gate of the truck to hold the groceries on the truck. The tail gate was down level and respondent leaned forward against the groceries, which were piled 2½ to 4 feet high at the front of the

truck and sloped back. In traveling to the first stop, the driver made a right turn at a street intersection and the front wheels of the truck went around the corner, but the right rear wheel struck the curb. Respondent was thrown off sideways, to the left and out into the street. He fell on his left shoulder and back and received severe injuries.

Appellant contends that the trial court should have directed a verdict for "defendant for the reason that the driver of the truck at the time of the occurrence was not engaged in defendant's business and subject to his direction and control, but was under the direction and control of Morgan Grocery Company and engaged in the work of that company." In stating the detailed facts on this issue, we will state the evidence favorable to respondent and disregard appellant's evidence unless it aids the respondent's case, and we will also disregard certain evidence of respondent's witnesses, where his own testimony is more favorable. If there was substantial evidence in the record from which the jury could infer and find that appellant's truck driver, at the time and place in question, was acting as appellant's employee, within the scope and course of his employment and in the discharge of appellant's business, the motion for a directed verdict was properly ruled.

The evidence shows that appellant was engaged in "general hauling," "all types of hauling," including contract hauling, and that he had been in that business in Kansas City for 28 years. The answer expressly admits that appellant "is engaged in the transfer, hauling and cartage business." He operated the Belger Cartage Service, of which he was the owner, and he had more than one hundred employees. In contract hauling, he operated as a common carrier of goods in the states of Kansas and Missouri and was governed by the rules of the Interstate Commerce Commission to whom he submitted his tariffs. Both oral and verbal contracts were made for hauling goods. He had a verbal contract with [738] Morgan by which he regularly furnished one truck with a driver and Morgan agreed to use it forty hours a week. In the event of an emergency, or an increase of business, he agreed to furnish Morgan additional trucks at the same hourly rate. Appellant furnished "gasoline, oil, drivers insurance, and everything governing that, cargo insurance that governs that." Morgan regularly used two delivery trucks in its business. One was furnished by appellant and operated by appellant's employee, and the other was owned by Morgan and was operated by respondent, Morgan's employee.

On February 26, 1946, since its truck was out of service, Morgan called upon appellant for an additional truck. In such case the call would come to appellant's dispatch room. Appellant testified: "The first truck that comes in and the man fits the picture, or who had been there before, we send them down because as I said before, we

are subject to cargo loss." In this case Kimberlain, a regular employee of appellant, who had been to Morgan's a time or two before, was sent with the truck in question. He was not the regular man sent to Morgan's every day. On the side of the truck was a sign, as follows: "Belger Cartage Service Since 1919." The truck belonged to appellant and he kept it in repair. Kimberlain had been regularly driving this truck for appellant for about four months and appellant was paying him for driving it. If the truck got out of repair on the road, Kimberlain would phone appellant and one of appellant's mechanics would come out and get it or Kimberlain would take it to appellant's shop for repair. Each day, some one at appellant's place would tell him where to go. He went everywhere that appellant instructed him to go. On the day in question, Kimberlain, as usual, reported to appellant's place of business at 8 A. M., ready to go to work, and someone in charge there told him that he was to go to the Morgan's that day. He was not at Morgan's the day before. He punched the time clock in appellant's office and took his truck and went to Morgan's where he assisted respondent and others to load the truck with groceries to be delivered to Morgan's customers. He finished his work about 7:15 o'clock that evening and returned to appellant's office where he "punched out and . . . went home." The truck was left in appellant's garage, where it was placed every night.

When Kimberlain reached appellant's office that evening, he reported to a girl in the office as to where he had been, and she punched his time sheet and wrote in a space on the sheet, "Morgan's Grocery," to show appellant how long Kimberlain was at Morgan's. Kimberlain made no report at Morgan's. His time was kept by appellant and his pay check was from appellant. He was hired by appellant, was on appellant's pay roll and could be fired only by appellant. Morgan had nothing to do with hiring or firing him, but could tell him when the company was "through with him," and he would then report back to appellant. After appellant had selected and sent a truck and driver to Morgan's on a particular day, Morgan could call for a change and, in that event, appellant could substitute one driver for another.

Kimberlain had everything to do with driving and operating the truck. On this occasion respondent had the direction-slips or bills-of-lading, but he had nothing to do with driving the truck. He had no control over the truck, except to tell the driver where to go. The person in charge at Morgan's could tell Kimberlain what to haul, how much to haul and where to go. Appellant's purpose in sending trucks and drivers to Morgan's was "to do delivering." Morgan paid appellant on an agreed hourly rate for the time the trucks and drivers were kept by Morgan, that is, "for the number of hours the drivers put in." Appellant testified that he was not concerned as to

whether or not they were used, what they hauled or where they went. Appellant did not always send the same drivers, nor the same trucks, but different drivers and different trucks "several times." It was respondent's first trip out with this driver. He did not know the driver's name and the driver did not know respondent's name.

■ Appellant relies upon "the borrowed servant doctrine" and contends that, as a matter of law, the evidence conclusively shows that appellant had surrendered all control over Kimberlain; and that Morgan not [739] only had the right to direct his (Kimberlain's) activities, but was actually directing them in the performance of his work at the time respondent was injured.

The applicable rule of law is well stated in O'Brien v. Rindskopf, 334 Mo. 1233, 70 S. W. (2d) 1085, 1088, the opinion quoting from other decisions and texts, as follows: " 'While it is true that one may be in the general service of another, and, nevertheless, with respect to particular work, may be the servant of. another, who may become liable for his acts, yet to escape liability the original master must surrender full control of the servant in the performance of said work. The fact that the servant is partially under the control of the third person will not release the original master for any wrongful act done by the servant in the ordinary course of his employment. . . .' The question of who is the master and therefore responsible for the negligent act of the servant is said to be determinable by who at the time has the right to control the acts of the servant causing the injury. . . . *To escape liability the original master must resign full control of the servant for the time being, it not being sufficient that the servant is partially under the control of a third person.* . . .' 'It is necessary to distinguish between authoritative direction and control and mere suggestions as to details or the necessary co-operation where the work furnished is part of a larger operation. A servant of one employer does not become the servant of another for whom the work is performed merely because the latter points out the work to the servant, or gives him signals calling the service into activity.' " (Italics ours.) See, also, State ex rel. Chapman v. Shain, 347 Mo. 308, 147 S. W. (2d) 457, 462; McFarland v. Dixie Machinery & Equipment Co., 348 Mo. 341, 153 S. W. (2d) 67, 70; Scherer v. Bryant, 273 Mo. 596, 201 S. W. 900, 902.

In the O'Brien case, the appellant, an undertaker and the owner of a flower truck, had let it out with a driver to another undertaker in charge of a funeral, for the regular price charged by and between undertakers in the community. The driver had been employed by the appellant undertaker for some years at a fixed salary and was familiar with these duties. It was unnecessary for the borrowing undertaker to instruct him other than as to the route and time schedule of the particular funeral procession. The borrowing undertaker could have fired him and the truck off the job, but could not have discharged

him from his general employment by the appellant undertaker, nor substituted another driver in his place. The drive negligently permitted the flower truck to collide with the plaintiff's automobile. Verdict and judgment went against the owner of the truck, the appellant undertaker. The question on appeal was whether the appellant undertaker, the owner of the truck and the general employer of the driver, was liable on the doctrine respondeat superior. The essential facts were not in dispute, the negligence of the driver was conceded and the court held that the only inference allowable from the admitted facts was that the appellant undertaker, the owner of the truck and general employer, was the master and responsible for the negligence of the driver.

In the case of McFarland v. Dixie Machinery & Equipment Co., supra, plaintiff was a helper on a WPA project. He was injured by the sudden and unusual movement of a tractor when he attempted to replace a pin that was working loose as the tractor was being used in pulling stumps. Defendant had rented the tractor to Kansas City. The city, as sponsor, had loaned it and the driver for use on the WPA project under the direction of WPA supervisory personnel. The tractor was left on the project at all times and the operator came there and operated under the complete supervision and control of the superintendent of the project, who had full charge of the entire project, men and machinery. The court held that the admitted facts conclusively showed a severance of the servant's "employment from his general employer, of a very complete and permanent character"; and that plaintiff's evidence "wholly failed to show any retention by defendant of control over or right to direct his (the servant's) physical activities, while on the project." (153 S. W. (2d) 67, 68-69.)

[740] The opinion in the McFarland case has so recently, completely and ably reviewed the applicable authorities that a further review at this time is not required. Reference is had to that opinion where the several tests applied and factors to be considered in determining control are fully discussed. It is there said: "Clearly our decisions have made this right of control, or direction, of the physical activities in performing service, the essential test to determine either who is master of a particular servant as to any questioned act, or whether the relationship is that of servant or independent contractor." The following comment upon Sec. 227 of the American Law Institute's Restatement of Agency is quoted with approval: "Since the question of liability is always raised because of some specific act done, the important question is not whether or not he remains the servant of the general employer as to matters generally, but whether or not, as to the act in question, he is acting in the business of and under the direction of one or the other. It is not conclusive that in practice he would be likely to obey the directions of the general employer in case of conflict of orders. The question

is as to whether it is understood between him and his employers that he is to remain in the allegiance of the first as to a specific act, or is to be employed in the business of and subject to the direction of the temporary employer as to the details of such act. This is a question of fact in each case."

Since the action is not against the special employer, we are not here concerned with the evidence tending to show that the special employer, Morgan, had *some* control over the physical conduct of the driver as to what, how much, when and where he should haul and deliver the groceries. See, Maher v. Donk Bros. Coal & Coke Co., 323 Mo. 799, 20 S. W. (2d) 888. Appellant relies on the evidence concerning these matters and further points out that at the time respondent was hurt, a sack of pancake flour fell off and broke, and respondent told the driver "he would have to go back and get" another sack. Respondent "sat down on the curb and waited until he came back." Appellant relies on this fact as further evidence of Morgan's control over the truck driver. The evidence referred to, however, does not show as a matter of law that Morgan had exclusive control over the driver and that appellant retained no control over the operation of the truck. The question here is whether we can say, as a matter of law, that Morgan had sole and exclusive control of the driver at the time and place in question; and that appellant had no right to control the acts of the driver causing the injury.

Appellant relies upon the McFarland case, supra, and upon Ellegood v. Brashear Freight Lines, Inc., 236 Mo. App. 971, 162 S. W. (2d) 628, and Coul v. Peck Dry Goods Co., 326 Mo. 870, 32 S. W. (2d) 758. The McFarland case turned upon peculiar and admitted facts conclusively showing a complete severance of the servant's employment from his general employer. The facts in that case are very different from the facts here, as clearly appears from the second review of the evidence in the latter part of the opinion in that case. (153 S. W. (2d) 67, 72). In the Ellegood case plaintiff was a general employee of one Curtis, who furnished a truck and driver (Ellegood) to defendant. Curtis saw Ellegood only once a week thereafter. On plaintiff's own testimony, the defendant Brashear Truck Lines, Inc. had complete control over the details of the work and Curtis at no time exercised or claimed the right to exercise any supervision over plaintiff in the performance of the work which he did for defendant. It was held that plaintiff was an employee of the defendant and that as a matter of law his rights were under the Compensation Act. He had filed a claim for compensation before instituting his action for damages and the cause was ruled as a matter of law upon his admissions. In that case the action was by the servant of the general employer against the borrowing employer and the case turned upon admissions by the plaintiff himself and upon a liberal construction of the Workmen's Compensation Act, while here the action is

by an injured employee of the borrowing employer* against the general employer of the borrowed servant and [741] the question is whether there was any evidence from which a jury could infer and find that the general employer retained *any* control over the borrowed servant at the very time the injury occurred.

In the Coul case, one Hubbs an extra driver using his own truck was making deliveries of goods for defendant to defendant's customers at $2.25 per hour. His truck collided with an automobile in which plaintiff was riding and plaintiff sued defendant on the theory that Hubbs was an employee of defendant. On the admitted facts the court held that the extra driver, Hubbs, was an independent contractor. The "borrowed servant doctrine" was not directly involved, but the case gives more aid to respondent than appellant.

As stated, the evidence here shows that appellant was engaged in the transfer, hauling and cartage business; that he owned the trucks and hired, fired and paid the drivers; that Kimberlain was in his general employment as a truck driver; that Kimberlain reported to appellant's office each morning and each evening; that he checked in and checked out and placed the truck in appellant's garage each night; that each morning appellant told Kimberlain where to go; that, when Kimberlain went to Morgan's, appellant knew the type and kind of work he would do after he got there, towit, that groceries would be hauled and delivered to Morgan's customers in the city; that when the day was over or the work finished the driver would report to appellant's office; that appellant at all times furnished gasoline, oil, repairs and road service; that appellant was "subject to cargo loss" and carried "drivers insurance"; and that appellant kept the time sheets for the drivers and collected at an agreed hourly rate for the time "put in" at Morgan's. This evidence, together with the other evidence heretofore set out, was sufficient for the jury to infer and find that, at the time and place in question, Kimberlain was engaged in the discharge of appellant's business in the hauling and delivery of the merchandise for hire; that Kimberlain was acting within the scope and course of his employment as a truck driver for appellant; and that appellant had not resigned and Morgan had not taken full and complete supervision and direction of Kimberlain in the driving and operation of the truck at the time respondent was injured. O'Brien v. Rindskopf, supra; Scherer v. Bryant, supra; Boroughf v. Schmidt (Mo. App.), 259 S. W. 881, 883; Burke v. Shaw Transfer Co., 211 Mo. App. 353, 243 S. W. 449, certiorari quashed in State ex rel. Shaw Transfer Co. v. Trimble (Mo. Sup.), 250 S. W. 384, 386. Clearly, the evidence does not conclusively show, as a matter of law, that appellant had released full and complete control of Kimberlain's activities and there was no such complete and permanent severance of the servant's employment from his general em-

ployer as in the McFarland case. The court did not err in refusing to direct a verdict for appellant.

Appellant further contends that "the court erred in giving plaintiff's instruction 1, for the reason that (a) said instruction is broader than the evidence and the facts in evidence do not warrant or justify a finding that defendant was negligent as submitted in such instruction, and (b) said instruction assumes that the act of the driver of the truck was negligent without requiring the jury to so find." The instruction submitted the issue "and if you further believe and find from the evidence that . . . said agent and servant of defendant so carelessly and negligently drove and operated said truck as to cause and permit it to run *upon and over the curbing* at" the point in question. (Italics ours.) Appellant contends the italicized portion is unsupported by evidence.

Respondent testified that the front wheels of the truck "went around the corner, and . . . the right rear wheel . . . struck the edge of the curb. That throwed me sideway, groceries and all, we all went out in the street." Respondent and the groceries were *thrown to the left*. Respondent said he could tell that the wheel hit the curb, "by the jolt." The word "jolt" means "a sudden shock or jerk; a jolting motion, as in a carriage moving over rough ground." Webster's New International Dictionary, Second Edition. The idea of an "up and down motion" is conveyed by the word used. The driver testified: "I stopped [742] for a light, and when I pulled out, it kind of pulled hard, and so I gave her a little gas, set the clutch and moved on. . . . When I got the green light, why I pulled out again and it seemed like it was pulling hard or something. . . . And I gave it more gas, and moved." Respondent was not bound by the driver's further statement that he did not run over the curb, since a contrary inference could be drawn from respondent's other evidence. We think the evidence entirely adequate to support an inference of fact that the right rear wheel ran "upon and over the curbing." The finding submitted was supported by substantial evidence. Respondent could submit his own theory on his own evidence. The instruction did not assume that the act of the driver in driving upon and over the curbing was negligent without requiring the jury to so find, but expressly required a finding of negligent operation in the respect stated. Subdivision (a) of the assignment in effect so concedes by the use of the words, "negligent as submitted in such instruction."

Finally, appellant contends that "the court erred in giving plaintiff's instruction No. 2 for the reason that said instruction is confusing and does not properly and correctly declare the law governing the borrowed servant question, and is not supported by evidence." This instruction submitted a finding of appellant's "right to control Kimberlain in his activities in respect to his work at the time in

question . . . and if you further find that the defendant Belger did not surrender full control of Kimberlain in the performance of his work" to Morgan. Appellant says the instruction is not supported by evidence because there is nothing in the evidence "that would authorize the jury to find that Belger was controlling, or had the right to control, Kimberlain in the work he was doing at the time of the occurrence." We have held that this issue was for the jury. Appellant further says the instruction is confusing and permits the jury to speculate on the question of who was responsible for Kimberlain's operation of the truck. Appellant's theory is that the evidence shows Morgan was actually directing and participating in the work the servant was doing at the time of the occurrence; that appellant was not present; and that "there was no basis for finding Belger responsible for the driver's acts at such time and to permit the jury to speculate on the question was certainly error." The argument assumes that the evidence conclusively shows that Morgan had the exclusive right to control the driving and operation of the truck at the time, and that appellant had no right to control. The instruction further submitted, along with the question of "the right to control," the question of appellant's right to substitute another driver, as the evidence shows he could do from day to day, and appellant contends said question has some bearing *only* upon the question of "whether or not an employee is a servant or an independent contractor," and does not apply in this case. We think that the jury, in determining the issue of control and right of control at the time respondent was injured, could properly consider the admitted fact that appellant from day to day selected the servant to send to Morgan. Requiring this additional finding could not have injured appellant. The argument that it was error to include the finding is further based on the theory (1) that "defendant did surrender full control of the driver (as a matter of law) and that there are no facts in evidence warranting a finding otherwise"; and (2) that there was no evidence "the driver was engaged in the defendant Belger's business at the time in question." The assignment is overruled.

The judgment is affirmed. *Bradley* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.