HARRY WILLIAM CHISENALL, Respondent, v. FINLEY THOMPSON, Appellant, No. 43007—252 S. W. (2d) 335.

Division Two, October 13, 1952.

Rehearing Denied, November 10, 1952.

*Finch & Finch* by *Freeland L. Jackson* for appellant.

*Joslyn & Joslyn* for respondent.

WESTHUES, C.—This is an action for damages for personal injuries. Plaintiff Chisenall lost his right hand when he attempted to remove cornstalks from between the revolving rollers of a corn picker without first placing the power take-off lever in neutral. At the time he was injured, he was operating the picker on the defendant's (his employer's) farm. The suit was first filed in Mississippi County, Missouri. A change of venue was taken by plaintiff and the case was tried in Scott County. A jury returned a verdict for plaintiff in the sum of $10,000 and from the judgment entered, the defendant appealed.

The case was submitted to a jury on two alleged charges of negligence: First, that the defendant instructed plaintiff "that the best and quickest way to clean the picker rolls on the cornpicker was by

leaving the rolls in operation.'' Second, failure to instruct plaintiff that cleaning the corn picker while the rolls were in operation was dangerous. The defendant interposed, and the court submitted by instruction, contributory negligence as a defense. · Defendant contends that plaintiff was guilty of contributory negligence as a matter of law.

The evidence disclosed that plaintiff had performed labor on farms, had driven trucks and tractors, and had also operated a combine. He had been employed by defendant Finley Thompson ''approximately a year'' prior to the time of his injury. In the fall of 1950 plaintiff and others were engaged in gathering corn for the defendant. A number of corn pickers were being operated. A new Case two-row picker which defendant purchased that fall was being driven by one Partain. Plaintiff's duties were to haul the cörn by truck from the elevator to the granary. About·December 10, plaintiff was assigned to operate the Case machine whereupon he ''proceeded to grease it and go to the field.'' That plaintiff was on the Thompson farm when the new Case picker was delivered and not entirely unfamiliar with it is noted in his testimony following:

''Q. I presume you looked it over like the rest of the boys did?

''A. Yes, sir.

''Q. I presume you looked it over and inspected it to see how it operated and what it looked like?

''A. I passed my approval on it, yes.

''Q. Was there anything about it too complicated for you to understand before you passed your approval on it there?

''A. No. sir.''

Plaintiff had operated the Case picker ''from five to eight days'' before he was injured on December 21, 1950. The machine had choked many times. This was occasioned by a rainy season which resulted in the ground being soft; the cornstalks instead of going down through the rolls on the picker would often pull loose at the roots and drag, thereby choking the machine. Plaintiff had cleaned the machine by pulling the stalks from beneath the machine while the rollers were revolving. At other times he had placed the power take-off lever in neutral and removed the stalks, cutting those which could not be pulled loose. He had also followed the dangerous method, that of removing the stalks from the top side of the rollers while they were revolving. The manner in which plaintiff was injured was described by him as follows:

''Q. Do you know approximately how many days you may have operated the picker prior to losing your hand?

''A. From five to eight days.

''Q. Tell the jury how it came about and explain how your hand was lost.

"A. About four o'clock that afternoon my machine choked up. We just had a small amount of corn in the field and we were all trying to hurry. When the machine clogged I got underneath and pulled on a few loose ones I could get hold of without danger to myself. When I looked in the rollers where the corn gathers and goes up on the chain I saw a few stalks lodged here and there. I cleaned them out. There was one lodged at the top end of the rollers and I got hold of it. It was the last one. As I went to pull up on it the rollers had a tendency to get a new hold on the stalk and yank it down. Before I knowed it I was in it, too."

Plaintiff's testimony was as follows as to the method he used in cleaning the machine the first day he operated it:

"Q. On the first day you operated that picker what method did you use to unchoke the stalks from between the rollers?

"A. I would stop the tractor as soon as I would see it choke up and take my power take-off out of gear and go back of the machine when it was stopped and pull and dig them out. They are tight when wedged in there. If you can't pull them out you have to cut them off with a knife, piece by piece.

"Q. Is that what you did the first day?

"A. Yes, sir.

"Q. Did it become choked frequently in that way?

"A. Yes. Several times during one round."

The corn picker performed a series of operations: the rollers (comparable to those of a wringer of a washing machine) rolling downward pulled the stalks through thereby squeezing the ears off and a chain moved the ears into an elevator; from there they were carried into a wagon. When the rollers became clogged, it was necessary to stop the tractor to remove the stalks. Witnesses, including the plaintiff, testified this could be done in several ways. Since the rollers revolved downward, the stalks could be removed by the operator's getting underneath the machine with the power take-off lever still in gear and pulling the stalks through the rollers. This method was considered by all as not a dangerous one. A second safe way was to put the take-off lever in neutral and remove the stalks from the upper side of the rollers, cutting with a knife those stalks which could not be thus pulled loose. A third method was to let the rollers continue to revolve while pushing the stalks through the rolls. This method was considered dangerous because the rolls moving at about 700 or 750 revolutions per minute would pull the stalks down and have a [337] tendency to jerk the cleaner's hands into the rolls.

Plaintiff's testimony was in effect that neither defendant nor anyone else instructed him in operating or unchoking the machine. He stated that the defendant came to the field after plaintiff had operated the machine for several days; that the machine choked and the defendant helped him clean it; that with the rollers revolving he went under-

neath and pulled some stalks through while the defendant pushed the stalks down through the rollers; that the defendant told him that was the best and quickest way to clean the machine. Further testimony was as follows:

"Q. Did Mr. Thompson ever give you any orders or instrucions?

"A. No, sir.

"Q. He never ordered you to do this in any particular way?

"A. No, sir.

"Q. He never instructed you in any way how to clean out the machine when it was clogged?

"A. No, except when it was running it was the fastest and best way.

"Q. He never ordered you to do it that way?

"A. No, sir."

It was also in evidence that there was a warning sign on the front of the picker with the words "BE CAREFUL" printed in large type. Then in smaller type there were listed five items. Numbers 2, 3, and 4 read as follows:

"2. Stop machine to adjust and oil.

"3. When mechanism becomes clogged, disconnect power before cleaning.

"4. Keep hands, feet and clothing away from power-driven parts."

Plaintiff testified that he at no time, prior to the day he was injured, had read the warning sign. Plaintiff was twenty-eight years old, with good eyesight, and could read and write, having had an eighth grade education.

We are of the opinion that plaintiff was guilty of negligence as a matter of law; that he realized it was dangerous to clean the picker by removing the stalks from the top side of the rollers while they were revolving. The danger was obvious to anyone even with limited experience in operating machinery. He knew it was safe to clean the machine while the power take-off lever was in neutral. He also knew it was safe to go underneath the machine and pull the cornstalks through the rollers while they were revolving. By the same reasoning he must have known of the danger in removing the stalks from the upper side of the rollers while they were in operation. On this point he testified as follows:

"Q. If you got on the top side and put your hand down there it would have a tendency to pull it down between the rollers?

"A. Yes, sir.

"Q. You knew that was the *principal* (principle) of the machine's operation?

"A. Yes, sir."

Note that plaintiff on the very occasion he was injured had gone under-

neath the machine and pulled some stalks through that he "could get hold of without danger to myself." Then he noticed that all stalks had not been cleared and he attempted to clean them out from the top. Plaintiff's testimony leaves no doubt that he fully understood the safe way and the dangerous way to clean the picker. At the time plaintiff was injured he. had successfully operated the picker for about eight days. He had cleaned it on numerous occasions by the safe method. Instructions to him were not necessary since the danger in cleaning the picker by removing the cornstalks from the top of the rollers was open and obvious. 56 C.J.S. 1057, Sec. 296; 65 C.J.S. 598, Sec. 89; Wiseman v. Northern Pacific Railway Co., 214 Minn. 101, 7 N.W. (2d) 672; Boles v. Hotel Maytag Co., 218 Iowa 306, 253 N.W. 515, 518. In 65 C.J.S. 722, Sec. 120, we find the following: "The duty to exercise ordinary care to avoid injury includes the duty to exercise ordinary care to observe and appreciate danger or threatened danger. A person is required to make reasonable use of his faculties of sight, hearing, and intelligence to discover dangers and conditions of danger to which he is or might become exposed, and one injured as a result of his failure to use his faculties [338] to observe and discover a danger which would have been observed and discovered by an ordinarily prudent person is guilty of contributory negligence." In Smith v. Forrester-Nace Box Co., 193 Mo. 715, 92 S.W. 394, l.c. 398, this court said: "It is true the plaintiff had no prior experience in the operation of machinery, but he was a man 45 years of age and possessed of ordinary intelligence. He was certain that if he put his hand into the machine so that it would come in contact with the back rollers the result would be that he would be hurt. Whether he made this admission or not, the danger resulting from allowing one's hand to come in contact with those rollers was perfectly obvious and it needed no warning to advise the plaintiff, or any one of ordinary common sense, of such danger." That rule applies to the plaintiff in this case. Note that plaintiff, at the time he was injured, partially cleaned the picker by the safe method by getting underneath and pulling on the stalks and as he testified he "pulled on a few loose ones I could get hold of without danger to myself." Then, without placing the take-off lever in neutral, he attempted to remove the other stalks from the rollers from the top and was injured.

Plaintiff testified he was not ordered to clean the picker in a manner that was dangerous. He chose such method instead of the safe method. In so doing he was guilty of negligence and cannot recover from the defendant. In 65 C.J.S. 732, Sec, 122, we note the following: "A person to whom two courses of conduct are open is required to exercise ordinary care in choosing which course he will pursue. If, under the same or similar circumstances, an ordinarily prudent person would not have so chosen, one having a choice is negligent in pursuing a course which is dangerous rather than one which is safe or even less

dangerous.'' See also Wininger v. Bennett, Mo. App., 104 S.W.(2d) 413, 1. c. 415 (4).

Following is a brief review of some of the cases cited by plaintiff. Morris v. Atlas Portland Cement Co., 323 Mo. 307, 19 S.W. (2d) 865, was a case where the danger was created by the negligent loading of a boulder on a dump truck. A vice-principal had ordered the loading of the boulder which fell, injuring the plaintiff. That case is not in point. In the present case there was no danger in cleaning the corn picker unless the plaintiff chose the dangerous method. A safe way was open to him. In Messing v. Judge & Dolph Drug Co., 322 Mo. 901, 18 S.W.(2d) 408, plaintiff was injured because of indiscriminate piling of boxes. A box fell and struck plaintiff. The case is no authority in this case. In Bennett v. Crystal Carbonate Lime Co., 146 Mo. App. 565, 124 S.W. 608, the court placed great stress on the fact that the plaintiff was ordered to pry out a certain rock in a manner fraught with danger. Plaintiff was injured. The court in the course of the opinion (see top of page, first column, 124 S.W. 611), had the following to say: ''And then, too, an element of non-liability frequently adverted to in such cases is the fact that the master has given the work entirely in the charge of the servant, and permits him to perform it in his own way. In such circumstances, if the servant is injured as a result of a transitory peril which inheres in the work for which he was employed, and is prosecuting, according to his own discretion, without a pointed direction or other specific negligence on the part of the master, it is frequently declared that the rule requiring a reasonably safe place does not obtain or that the servant has assumed the risk as one ordinarily incident to the employment.''

In the present case, the plaintiff admitted he *had not been ordered* to follow the dangerous method when cleaning the corn picker. In fact, the evidence shows that he usually followed the safe method. Cleaning the picker by the dangerous method was plaintiff's voluntary act. Considering all of the evidence, we rule that plaintiff was guilty of contributory negligence and, therefore, the judgment must be and is hereby reversed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.