Bernice K. KOIRTYOHANN, Surviving Spouse of Wm. L. Koirtyohann, Deceased, Plaintiff-Respondent,

v.

WASHINGTON PLUMBING AND HEATING COMPANY, a Corporation, and Henry O. Hoemeyer, Defendants-Appellants.

No. 54805.

Supreme Court of Missouri,
Division No. 2.

Sept. 13, 1971.

Rehearing Denied Oct. 11, 1971.

Modified on Court's Own Motion
Oct. 11, 1971.

Fred B. Whalen, Whalen, O'Connor & Byrne, St. Louis, Leo A. Politte, Washington, for plaintiff-respondent.

R. E. Keaney, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, John H. Mittendorf, Union, for defendants-appellants.

FINCH, Judge.

This case, written on reassignment, involves the question of whether plaintiff made a submissible case and whether the contributory negligence and converse instructions given on behalf of the two defendants were prejudicially erroneous as not being in conformity with the requirements of Missouri Approved Instructions (MAI).

The surviving spouse of Wm. L. Koirtyohann brought an action for wrongful death of her husband against Washington Plumbing and Heating Company (Washington) and Henry O. Hoemeyer (Hoemeyer), a heavy equipment operator in the employ of Washington. The jury returned a verdict in favor of both defendants, but the trial court awarded plaintiff a new trial on the ground that Instructions 7 and 9 (contributory negligence) and 8 and 10 (converse) were prejudicially erroneous. We affirm.

The Water Department of the City of Washington was replacing a two-inch water main with a six-inch line. The ditch was being dug by use of a trenching machine which was owned by the city and operated by the deceased, who was foreman on the job. That machine dug a ditch two feet wide and up to a maximum of 4½ feet deep, piling the dirt on one side of the ditch by means of an elevator on the machine. Using that machine, deceased dug a ditch approximately 300 feet in length, at which point he stopped because a culvert and a creek, both of which intersected the water line, necessitated a deeper ditch which could not be dug with the trenching machine.

The city frequently rented equipment from Washington, and on this occasion the city engineer, at the request of the superintendent of the water department, called Washington and requested that it furnish a crawler-tractor with a backhoe attachment, together with an operator of the machine. Washington did not rent this kind of equipment without furnishing the operator

therefor. It made a charge of a fixed amount per hour which covered the machine and operator.

Following the call from the city, Washington sent Hoemeyer to the city job site with the requested backhoe equipped tractor. The city did not select Hoemeyer and did not know what person Washington would send out to operate the backhoe.

On arrival at the job site, deceased showed Hoemeyer where he wanted the ditch to run, but gave him no instructions as to how to operate the backhoe, how wide the ditch should be, how the sides of the ditch should be fixed, or where the dirt removed from the ditch should be placed. Hoemeyer, an experienced heavy equipment operator, started at the point where the trenching machine had stopped and dug a deeper ditch toward the culvert. In so doing, he piled dirt on the south side of the ditch, which was the same side on which the dirt had been placed by the trenching machine. It sloped away from the edge of the ditch, the height of the pile varying from two to five feet.

Hoemeyer excavated up to the culvert but could not dig beneath it. It was necessary that this be done by hand, and the deceased and another city employee entered the ditch with shovels for that purpose. Meanwhile, Hoemeyer started digging on the other side of the culvert. About thirty minutes later, at which time Hoemeyer was twenty to thirty feet from the deceased, the south wall of the ditch caved in in the area where deceased was working. The ditch was five to six feet deep at the point of the cave-in and was seven to eight feet deep where the backhoe was operating.

Plaintiff submitted the case on the basis that the defendants were negligent in piling the dirt alongside the ditch where the added weight would cause the side to cave in, and in failing to slope the sides of the ditch so as to lessen the likelihood of a cave-in. Under the latter procedure, known as veeing, the ditch is made wider at the top, with the sidewalls sloping out-

wardly from bottom to top. For example, the ditch would be sloped back an additional three feet on each side of a five-foot ditch. The evidence was that this was a method with which Hoemeyer was familiar and which he had used.

There was testimony that this was a filled area and that in the vicinity of the culvert Hoemeyer encountered several tree trunks and branches which he dragged out with the bucket of the backhoe. This had the effect of loosening the dirt at the top of the ditch at that point. It also resulted in some of the sides of the ditch being concave. Hoemeyer testified that he determined on his own where to pile the dirt from the excavation, and that he knew the weight of the dirt would cause pressure on the wall of the ditch. He also knew that veeing the ditch would remove pressure on the wall and would remove a part of the dirt which would fall into the ditch if there was a cave-in. He testified that he was operating the machine at full speed and was aware that day of the hazard of a cave-in of the ditch, but gave no warning of any kind to deceased.

Hoemeyer was employed and paid by Washington. He testified that he did not consent to work for anyone else and that he was working for Washington on this job. Even so, Washington disclaims responsibility for his acts on the theory that he became an employee of the city under the borrowed servant doctrine. Washington says it gave Hoemeyer no instructions as to how to do this job, and that he was subject to the directions of deceased Koirtyohann, the city's foreman on the job.

There are numerous cases in Missouri dealing with the borrowed servant doctrine. Each case depends on its particular facts, but the underlying rule is that the right of control is determinative. To escape liability the general employer must surrender full control of the employee in the performance of the particular work, it not being sufficient if the servant is partially under the control of a third

party. Cases so holding include McFarland v. Dixie Machinery & Equipment Co., 348 Mo. 341, 153 S.W.2d 67; and Wills v. Belger, 357 Mo. 1177, 212 S.W.2d 736. See also Restatement, Second, Agency, § 227, with reference to factors to consider. Applying the doctrine of these authorities to the facts and circumstances in this particular situation, we conclude that Hoemeyer did not become an employee of the city under the borrowed servant doctrine. Hoemeyer did say that he would have complied with a request of Koirtyohann to slow down the speed of the motor on the backhoe and that he was taking orders from Koirtyohann on the job, but the evidence shows that the only directions given were where to dig the ditch and how deep it should be. The evidence does not show that full control of Hoemeyer was surrendered to the city. Consequently, he remained the employee of Washington and the latter would be liable under the doctrine of respondeat superior for negligent acts of Hoemeyer.

■ The ditch in question was being excavated for the express purpose of permitting the installation of a new six-inch water main. In digging that trench, Washington (which in effect was a subcontractor to dig the deeper portion of this ditch) was obligated to exercise reasonable care so as not to cause injury to the employees of others. This meant it must exercise reasonable care in its work to create a safe trench in which the city crew could work while laying the pipe. Killian v. Wheeloc Engineering Co., Mo., 350 S.W.2d 759, 762; Miller v. Brunson Const. Co., Mo., 250 S.W.2d 958. That included the duty to take precautionary measures when necessary to carry out that duty. According to Hoemeyer's own testimony, he knew that there was danger of a cave-in of the wall of the ditch he was digging because of the pressure caused by the dirt he piled near the ditch and because it was not veed. He took no steps to avoid that hazard and he did not warn deceased of the danger. This made a submissible case as to whether such conduct was negligent, and whether, as a direct result thereof, deceased was killed.

Defendants urge that Koirtyohann was experienced in this work, that he knew about veeing ditches, and that he was in the ditch where he could see the conditions, such as the dirt being piled up along the side, the concave wall, the spongy filled earth, and the fact that the walls were not veed nor shored. Such facts, according to defendants, resulted in plaintiff not having made a submissible case. Actually, of course, what defendants are urging is not that plaintiff's evidence did not make a submissible case of negligence on the part of the defendants, but rather that Koirtyohann was guilty of contributory negligence as a matter of law, and plaintiff cannot recover for that reason.

We conclude that the issue of contributory negligence was for the jury. Koirtyohann was killed and we have no testimony from him and no statements he made to support a contention that he knew of the dangerous condition or that such was apparent to him. There was testimony as to his prior experience in ditching, but that related to his operation of the trenching machine which at most could dig only to a depth of $4\frac{1}{2}$ feet. We find no testimony from anyone from which we can say as a matter of law that the danger was so obvious that deceased was constructively aware of the hazard and hence contributorily negligent as a matter of law when he entered and remained in the ditch to dig under the culvert.

Defendants cite and rely particularly on the cases of Kenward v. Hultz, Mo.App., 371 S.W.2d 344, and Sellens v. Christman, Mo., 418 S.W.2d 6, but we find them to be inapplicable. Both cases involve and consider a landowner-invitee relationship and whether the evidence disclosed superior knowledge on the part of the landowner so as to obligate him to warn the invitee. That question is not the one here presented. Rather, we have a question involving an employer-employee relationship and

whether, if Hoemeyer was not a borrowed servant, he and his employer owed a duty to the city's employee which was breached. As a part of that determination, we must decide, as we have done, whether the city employee (deceased) was guilty of contributory negligence as a matter of law.

We also have examined the other cases cited by defendants, some of which were employer-employee cases, but we conclude that they do not establish a right of defendants in this case to a directed verdict.

We then reach the question of whether the instructions which the trial court cited as a basis for granting a new trial were prejudicially erroneous.

■ Defendant Washington submitted the following contributory negligence instruction:

"Instruction No. 7

Your verdict must be for the defendant Washington Plumbing and Heating Company if you believe:

FIRST, William Koirtyohann either: worked inside said ditch knowing the walls thereof were not shored; or worked inside the ditch knowing the walls thereof were not 'V' shaped and sloping inward toward the bottom; or worked inside said ditch knowing dirt had been piled close to the edge of the ditch; and

SECOND, William Koirtyohann's conduct in any one or more of the respects submitted in Paragraph First, was negligent; and

THIRD, such negligence of William Koirtyohann directly caused or directly contributed to cause his death.

M.A.I. 28.01 Modified."

Hoemeyer's Instruction No. 9 was identical except for substitution of names.

■ Both of these instructions conform to the general contributory negligence instruction set out as MAI 32.01 (formerly 28.01 in MAI, First Edition). Even so, the trial court correctly held that these instructions were erroneous. In a situation in which one's knowledge of general conditions from which danger arose is not necessarily knowledge and appreciation of that danger, before one charged with contributory negligence can be convicted thereof, there must be a finding that he acted or failed to act with knowledge and appreciation, actual or constructive, of the danger of injury which his conduct involved. Bledsoe v. Northside Supply & Development Co., Mo., 429 S.W.2d 727; Davidson v. International Shoe Co., Mo., 427 S.W.2d 421. In such situations, the contributory negligence instruction must submit this issue. This court so held in Davidson and Bledsoe. There was no evidence in this case that the deceased had actual knowledge of the danger presented by the general conditions of the trench. At most, there was evidence which would support an inference of knowledge and from which the jury could have found knowledge and appreciation, but the instructions did not submit that issue. Consequently, they were erroneous.

In so holding, we do not mean to indicate that MAI 32.01 is not a correct instruction in a proper situation. It is the form of instruction to be used in cases involving certain types of contributory negligence. This is pointed out in the discussion in the opinion in Bledsoe, 429 S.W.2d 1.c. 732, wherein the court discussed two types of contributory negligence. In the case now before us, however, the contributory negligence asserted is of the type discussed in Restatement, Second, Torts, § 466(b), and in such situation MAI 32.01 is not a sufficient instruction.

Since this case is to be retried, we consider also whether the converse instructions given by defendants were erroneous, as the trial court held in granting a new trial.

The converse instruction given on behalf of Hoemeyer was as follows:

"Instruction No. 10

The Court instructs the jury your verdict must be in favor of defendant Henry O. Hoemeyer if you believe he was not negligent in failing to slope or 'V' shape the walls of the ditch and was not negligent in piling dirt close to the side of said ditch.

M.A.I. 29.05 Modified."

Instruction No. 8, given by Washington, was almost identical except that it also conversed the issue of agency of Hoemeyer.

Defendants chose to utilize the third or affirmative method of converse, as their brief recognizes. At page 351 of MAI, Second Edition, a discussion of this method of conversing includes the following language: "An instruction beginning 'Your verdict must be for defendant if you believe' followed by a hypothesized *ultimate issue* which, if true, would defeat plaintiff's claim. Use of this form requires independent evidence to support it. The jurors are instructed that if they are unable to form a belief on any proposition, that proposition fails. Thus by using this form defendant assumes the risk of nonpersuasion." Defendants could have given true converse instructions which would not have required affirmative evidence to support them. However, under the method chosen, they assumed the burden of nonpersuasion and were not entitled to such instructions unless there was evidence in support of the proposition that Hoemeyer was not negligent in failing to slope or 'V' shape the walls and was not negligent in piling dirt close to the side of the ditch. There was no such evidence, and the defendants do not contend that there was. Under such circumstances, the giving of these instructions was error. Cases cited by defendants do not hold otherwise.

Judgment affirmed.

MORGAN, P. J., concurs.

DONNELLY, J., concurs in result in separate opinion filed.

DONNELLY, Judge (concurring in result).

I agree that the trial court erred in giving Instructions 8 and 10, and properly awarded plaintiff a new trial.

I do not concur in that part of the principal opinion which holds the trial court erred in giving Instructions 7 and 9 on contributory negligence.

The principal opinion recognizes that contributory negligence may consist of "an intentional exposure to a danger of which the plaintiff is aware." Prosser, The Law of Torts, 3rd Ed., § 64, p. 434; 2 Restat., Law of Torts, Second, § 466(a), and 65A C.J.S. Negligence § 119.

However, the principal opinion rejects the idea that contributory negligence may also have consisted in this case of plaintiff's "failure to discover or appreciate a risk which would be apparent to a reasonable man * * *." Prosser, supra, p. 434; Restat., supra, § 466(b); 65A C.J.S. Negligence § 120(1).

In Chisenall v. Thompson, 363 Mo. 538, 543, 252 S.W.2d 335, 337–338, this Court said: "In 65 C.J.S. Negligence § 120, page 722, we find the following: 'The duty to exercise ordinary care to avoid injury includes the duty to exercise ordinary care to observe and appreciate danger or threatened danger. A person is required to make reasonable use of his faculties of sight, hearing, and intelligence to discover dangers and conditions of danger to which he is or might become exposed, and one injured as a result of his failure to use his faculties to observe and discover a danger which would have been observed and discovered by an ordinarily prudent person is guilty of contributory negligence.' "

In my opinion, Instructions No. 7 and 9, if accompanied by a definition of "negligence" (MAI 11.02), would be proper to submit this issue of contributory negligence on re-trial. Brewer v. Swift & Company, Mo.Sup., 451 S.W.2d 131. "Every one has the duty to exercise ordinary care for his own safety and should not expect some one else to compensate him for his injuries when he does not do so." Senseney v. Landay Real Estate Co., 345 Mo. 128, 134, 131 S.W.2d 595, 598.

I concur in result.