WILLIAM VERT v. METROPOLITAN LIFE INSURANCE COMPANY, a Corporation, Appellant.—117 S. W. (2d) 252.

Court en Banc, May 21, 1938.

630

*Jones, Hocker, Gladney & Jones* and *Arnot L. Sheppard* for appellant.

632

*Igoe, Carroll & Keefe* for respondent.

*A. E. Spencer* and *Mosman, Rogers, Bell & Buzard, amici curiae.*

HYDE, C.—This is an action for damages for personal injuries. Plaintiff obtained a verdict for $20,000 against both defendants, Francis Crowe and Metropolitan Life Insurance Company. A *remittitur* of $8000 was made as ordered by the trial court and judgment for $12,000 was entered against both defendants. The Insurance Company alone has appealed from this judgment.

Appellant offered no evidence at the trial but stood on its demurrer to plaintiff's evidence. Appellant contends here that its demurrer should have been sustained and peremptory instruction to find in its favor given, because under the evidence it was not liable for the acts of Crowe at the time plaintiff was injured. It therefore may be conceded in the consideration of this contention that plaintiff's injuries were caused by the negligence of Crowe in the operation of his automobile. Appellant is an insurance company engaged in both the industrial and ordinary life insurance business. In February, 1931, Crowe executed a written application to appellant for appointment as an agent, which was accepted and a written contract entered into between him and appellant. Crowe was assigned certain territory, which was called his "debit" for industrial insurance business transacted therein. This territory was in East St. Louis, Illinois, where he lived. Crowe was required to perform certain services in his "debit," including the collection of all industrial insurance premiums and his compensation therefor was a percentage based upon the amount of collections made by him within the limits of his "debit." Most of appellant's policyholders living within his "debit" carried industrial insurance, the premiums for which were due weekly, and it was Crowe's duty to collect these premiums each week. *As to ordinary life insurance,* as distinguished from industrial in-

surance, *Crowe could sell such insurance anywhere in Missouri or Illinois,* like any other salesman of old line life insurance, and receive whatever commission was allowed by the company to its regular life insurance agents on that class of policies. The contract provided that Crowe should be bound by all of the rules and regulations of appellant contained in the instruction book to agents, or otherwise promulgated; that he should account for all money coming into his hands and belonging to appellant, and that the appellant might cancel the contract whenever it desired. The office of the company to which Crowe was attached was the office in East St. Louis, Illinois, and he was under the supervision of a Mr. Breig, who was assistant manager at that office for several years prior to August 6, 1932, which date was two months after the date of the accident here involved. It was his duty to deliver to the office of appellant each morning the premiums he had collected on the previous day, and thereafter he was free to work in or out of his ''debit'' as he saw fit. He had no regular or prescribed hours of work; he could go to work at whatever hour he saw fit in the morning, and could quit at whatever hour he saw fit in the afternoon. If he finished his work at two or three o'clock in the afternoon, he would quit and spend the remainder of the day as he pleased; but he was required to turn in each previous day's collections at eight o'clock on the succeeding morning.

Crowe owned and operated a Willys-Knight coupe, which he had purchased, which was maintained and operated by him exclusively, and for the maintenance expenses of which he was not compensated by appellant. With appellant's knowledge, he used this automobile in his work when, as, and if he saw fit. Assistant Manager Breig testified that Crowe ''would drive to the office with the car and then drive from the office to his debit, and then walk from house to house as long as he could get back to his car within a certain period of time;'' and that ''he used the car also in soliciting new business.'' Breig further stated: ''I sometimes went with Mr. Crowe on trips (soliciting new insurance) when he used his automobile. I went with him simply to help him sell the insurance, as I had a little more experience and training in that work. Sometimes went in his car and sometimes we went in my own.'' Each Friday evening there was a meeting of the agents in round-table discussion for the benefit of all agents, and each agent was expected to attend. Although most of the agents used automobiles, there were some who did not. During the year 1932, at the East St. Louis office, there were about twenty-seven men under Breig's supervision, and all except two or three of them had automobiles.

On Friday morning, June 3, 1932, the day on which respondent was injured, Crowe had finished collecting the weekly premiums due with-

in his debit in East St. Louis, and turned them in at the office of appellant. He did not intend to do any further work in his debit until the following Monday, when he would start collecting the next week's premiums. He had no intention of making any more collections in his debit that week, and there was no more business there for appellant requiring his attention on that Friday. A Miss Duddleston, who had formerly lived within Crowe's debit in East St. Louis, had moved to St. Louis, Missouri. Without saying anything to anyone connected with appellant, and entirely "on his own hook," Crowe decided that he would come over to St. Louis, Missouri, and see Miss Duddleston for the purpose of selling her additional ordinary or old line insurance by changing the twenty-payment life insurance which she already had to twenty-year endowment and making up the difference in amount with new insurance. A Mr. Somerville, another of appellant's salesmen, and who had parked his automobile that morning at Ninth and St. Clair Streets in East St. Louis, Illinois, made this trip with Crowe, for no particular purpose, except that he had nothing else to do. When Crowe and Somerville reached Miss Duddleston's home, they found that she was not there, and they then started to return to East St. Louis, Illinois. Crowe said that it was his intention to drive to the point where Somerville's car was parked, let him out there, *and then go on home to supper;* that it was not his intention to then return to the office of appellant, as he had no further business to attend to there on that day; but that he did intend to go to the appellant's office about eight o'clock that evening to attend a round-table meeting of the agents. It was while Crowe was returning from Miss Duddleston's home, in St. Louis, Missouri, to East St. Louis, Illinois, about four P. M., that the collision occurred at Tenth and Spruce Streets, in St. Louis, Missouri, in which plaintiff was injured. Crowe was offered as a witness by plaintiff and testified to these facts.

Plaintiff says: "The control which appellant had the right to exercise was so stated in the contract as to be unlimited—apparently designedly so, since the employee was required to submit in advance to such control as the Company might choose to exert through amendments in its rules and regulations 'by circular letters or otherwise,' We call attention to the following elements in the actually effective rules, which we submit would foreclose appellant's contentions even without that factor:

"(1) That the Agent was required to devote all of his time (the whole of each working day) to the Company's business and was 'required' to solicit applications for insurance for the appellant Company, exclusively; and that he had no discretionary power and was required to conform to instructions in making representations to applicants for insurance and others.

"(2) That his employment might be terminated 'at any time by the Company in its discretion or at its option.'

"(3) That he is referred to at a number of places, both in the contract and in the rules, as being in the 'service' of the Company, and as its 'employee.'

"(4) That the rules to which he was subjected were not treated as mere specifications to be complied with by an independent contractor—conducting his own business and responsible only for the result of his efforts. They were rules, in the language of the Instruction Book, 'for conducting the business of the Company.' "

■ Plaintiff points out certain other rules which he contends are sufficient to show that the company had and used the right to direct Crowe's methods of soliciting insurance, as follows:

"Rule 1 says: Agents have no discretionary power. Their representations to applicants, policyholders or others must conform to instructions given by or received from the Company.

"Rule 5 instructs him with regard to the collection of premiums when taking an application for insurance.

"Rule 6 forbids him to pay a premium for any policyholder.

"Rule 11 forbids him to assign or transfer commissions or compensation earned or to accrue, as well as to accept any compensation from his successor or other person for the transfer of any business.

"Rule 17 prohibits him from allowing, "directly or indirectly, any rebate on any premium or any special favor or advantage' on any policy of insurance.

"Rule 18 forbids him to make derogatory statements of other companies.

"Rule 20 forbids him to cash a company check or to undertake to procure the cash therefor, or to cash a premium check."

The rules above set out, at least insofar as they could concern selling old line life insurance outside of Crowe's industrial insurance territory, prescribe only *what* business should be transacted. They do not direct his physical activities nor control his physical movements in engaging in soliciting prospects therefor nor even require' him to engage in such activity outside his debit. They are instructions concerning entering into contractual relations. Plaintiff contends that the company had the right to direct Crowe because he had surrendered all of his working time to it. The rules do require him not to undertake any other work or business except the company's own, but requiring an agent not to represent anyone else does not direct him *how* he must work in representing his principal. If an independent contractor building a house would contract not to do any other work until he completed the agreed job, surely that would not create the relation of master and servant; neither would an ex-

clusive agency to handle products of a certain make only; as, for example, an agency to sell automobiles of a certain make only.

If the specific trip involved in this case was entirely separate and apart from the agent's regular employment, then, even if he was an employee or servant in his regular work, he was not acting within the scope of his employment as such while on such a trip. ''While in ordinary transactions the existence of the relation of contractor as between two given persons excludes that of principal and agent, or master and servant, there is not necessarily such a repugnance between them that they cannot exist together, and an employee may be an independent contractor as to certain work and yet be a mere servant as to other work for the same employer.'' [14 R. C. L. 76, sec. 13; notes, 17 L. R. A. (N. S.) 380; 19 Ann. Cas. 20; 65 L. R. A. 450; 19 A. L. R. 270; Ann. Cas. 1918C, 634.] Going outside of his debit district to sell old line life insurance was purely permissive and depended upon his own initiative, although, of course, it was to the company's interest to make it to Crowe's interest financially to do so. It did this by allowing him the regular commission, on life insurance policies he could sell, in addition to the salary he received for his industrial insurance work. Rules requiring him to remit checks and forbidding him to cash them only related to the handling of money received in a fiduciary capacity; a client might give such instructions to an attorney. Rules giving him certain instructions about what kind of an insurance contract he could make (and forbidding him to make any other), and forbidding him to make any such contract for less than the fixed charge, only required him not to violate the law of this State prohibiting discrimination by insurance companies. [See Sec. 5729, R. S. 1929.] There is nothing in any of these rules about when, where or how Crowe should attempt to see anyone outside his debit district for the purpose of inducing him to take an old line life insurance policy. We do not rule travel in his debit district, but for the purpose of this case consider that the company would be liable for his negligent use of his automobile therein. Nevertheless, a master is liable for the acts of his employee ''only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged with the result of the wrong at the time of the injury, and in respect of the very transaction out of which the injury arose.'' [39 C. J. 1268, sec. 1452; Guthrie v. Holmes, 272 Mo. 215, 198 S. W. 854, Ann. Cas. 1918D, 1123; Miller v. Rice-Stix Dry Goods Co. (Mo. App.), 223 S. W. 437; Michael v. Pulliam (Mo. App.), 215 S. W. 763; 42 C. J. 1104, sec. 867; Acker v. Koopman (Mo.), 50 S. W. (2d) 100.] The most that the evidence here could show, viewed most favorably to plaintiff's contentions, is that when plaintiff was injured Crowe was returning to his home in East St. Louis, from

a trip he had made outside his debit district for the purpose of attempting to sell old line life insurance, in order to be ready to go from there that evening to the regular weekly meeting of the company's agents. He was not on the way from his home to that meeting, and in fact never went to it that night. From the time of day it was, it seems reasonable that he was going to his home for his evening meal, and, since this appears from plaintiff's own evidence, it was not a controverted fact. The decisive point is that Crowe was not on or returning from a trip which the company had directed him to make, nor which was made for the purpose of performing any duty the company *required* him to do. The trip was made to carry on another kind of activity which was clearly separate and apart from his regular industrial insurance duties.

There should be a clear distinction between an agent who is employed and authorized to bring about *only* contractual relations between his principal and others on his own initiative and by his own methods, and a servant or employee who is employed to perform physical service within the time and in the manner his employer might direct. The American Law Institute's discussion of this rule states:

"The important distinction is between service in which the actor's physical activities and his time are surrendered to the control of the master, and service under an agreement to accomplish results or to use care and skill in accomplishing results. Those rendering service but retaining control over the manner of doing it are not servants. They may be agents, agreeing only to use care and skill to accomplish a result and subject to the fiduciary duties of loyalty and obedience to the wishes of the principal; or they may be persons employed to accomplish physical results, without fiduciary obligations, as where a contractor is paid to build a house. An agent who is not subject to control as to the manner in which he performs the acts that constitute the execution of his agency is in a similar relation to the principal as to such conduct as one who agrees only to accomplish mere physical results." [1 Restatement of Agency, sec. 485.] (Perhaps the term "right to direct" would express the rule more clearly than "right to control?" This is true because if there is a right to direct the method, the employer might still be liable although the employee did not use the method directed in the particular instance.)

A person, who is ordinarily known as a life insurance agent is certainly not within the classification of a servant or employee subject to direction as to *how* he shall attempt to accomplish results. His employment is *solely* for the purpose of bringing about contractual relations between his company and others. He works on his own initiative. His principal is properly held not to be liable for *physical harm* he causes because it has nothing to do with directing

his *physical movements*. [Wesolowski v. John Hancock Mut. Life Ins. Co. (Pa.), 162 Atl. 166; American National Ins. Co. v. Denke (Tex.), 95 S. W. (2d) 370; American Savings Life Ins. Co. v. Riplinger (Ky.), 60 S. W. (2d) 115; American Law Institute Restatement of Agency, secs. 220, 250, 251.]

When Crowe left his debit district to engage in obtaining old line life insurance business outside of it, he left his regular employment, which occupied most of his time, and in which he had duties that did require him to make physical movements over a definite territory to find and collect from certain persons at the regular intervals as directed by the company or which it no doubt had the right to direct. In selling life insurance elsewhere, he was not running on such physical errands for his employer, but became, while he was outside of his debit, *solely* what is ordinarily known as a life insurance agent, working on his own initiative *solely* for the purpose of bringing about contractual relations between his company and others. He then had an entirely different relationship with his principal than he did when performing his regular duties in his debit which included physical errands, which required his physical services to accomplish, and which we may assume the company had the right to direct. In the former relation, his physical movements were only incidental and it made no difference to the company *when* or *how* they were made; while in the latter they were the direct method of accomplishing the result sought and the company had the right to direct them. Knowledge on the part of the company that Crowe used his car as a means of transportation when soliciting life insurance business outside his regular debit district was not sufficient to impose liability upon it for damage done by its use because it was left to his own initiative and decision whether he ever went out of it to sell life insurance and if so when, where, and how. Selling life insurance was not accomplished by physical movements at a time and place and in a manner which it was intended that the company should have the right to direct, and it should not be liable for physical damage done by Crowe, while he was engaged in such business on his own initiative. [See American Law Institute's Restatement of Agency, secs. 214, 220, 250, 251; Kourik v. English, 340 Mo. 367, 100 S. W. (2d) 901, and cases cited; Barnes v. Real Silk Hosiery Mills, 341 Mo. 563, 108 S. W. (2d) 58; Riggs v. Higgins, 341 Mo. 1, 106 S. W. (2d) 1.]

Plaintiff cites Brunk v. Hamilton Brown Shoe Co., 334 Mo. 517, 66 S. W. (2d) 903. In the Brunk case, the shoe company employee was clearly on his employer's trip, in his employer's automobile, traveling a route and calling on customers in accordance with his employer's directions. His duties required physical movements in a specified direction, to see designated persons and to show them his employer's wares. He also attempted to make contracts, that is

sell merchandise to them, but so does a clerk in a store. [See 1 American Law Institute Restatement of Agency, 485.] Borgstede v. Waldbauer, 337 Mo. 1205, 88 S. W. (2d) 373, also cited by plaintiff, was likewise a case where a salesman was making a trip in the nature of a physical errand for his employer (to collect an account) and there seems to have been no real contention that he did not *go* on his employer's trip. Of course, if an employee is sent on his employer's errand, he is on his employer's trip on the way back as well as on the way out. Neither of these cases resembles the situation in this case, where Crowe could decide whether or not he would sell life insurance at all and, if he decided to do so, he *could go where he pleased, when he pleased, and how he pleased to any person anywhere* in Illinois or Missouri, and where such trips were made *solely* for the purpose of bringing about contractual relations between third persons and his principal. Apparently his only restrictions, on engaging in the sale of old line life insurance, were that he should satisfactorily attend to his weekly duties in his debit and attend the weekly agents' meeting. *When he was selling life insurance outside his debit, he was clearly an agent to bring about contractual relations only, and not a mere employee or servant;* his employer neither reserved nor attempted to exercise any right *to direct his physical conduct, methods or movements,* in the sale of life insurance, nor to direct *how* or *when* he should attempt to accomplish such results. We hold that Crowe's activity as a life insurance agent was so entirely separate from his work in his industrial insurance debit that it was no part of it; that when he went out of his debit for that purpose he wholly departed from his regular employment in which the company had the right to direct his physical activity for its accomplishment; that the company neither reserved the right to direct the manner in which Crowe should travel, outside of his debit for the purpose of selling old line life insurance, nor expressly or impliedly directed his travel in such business; and that it is not liable for physical damage he did when making trips solely for such purpose wherever he desired to go in Illinois or Missouri, or in returning from such expeditions.

The judgment against the defendant Metropolitan Life Insurance Company is reversed.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the Court en Banc. All concur, except *Frank* and *Gantt, JJ.,* who dissent, and *Douglas, J.,* not sitting.