Alvie James COBLE, Plaintiff-Appellant,

v.

ECONOMY FORMS CORPORATION, Defendant-Respondent.

No. 7589.

Springfield Court of Appeals.

Missouri.

May 27, 1957.

Walker, Daniel, Clampett & Rittershouse, Springfield, for plaintiff-appellant.

Frank C. Mann, Mann, Walter, Powell & Burkart, Springfield, for defendant-respondent.

RUARK, Judge.

Here is an appeal from a judgment dismissing plaintiff's second amended petition because of failure to state a claim upon which relief could be granted.

The petition charges that one Pyle had a contract to build a high school at Springfield; that Pyle and defendant, Economy Forms Corporation, entered into a contract entitled "Form Rental Service Agreement," which contract was incorporated into the petition. This contract provided (to a mind wholly unsullied by any familiarity with engineering formulas) for a rather complicated method of computing the rental to be charged, including a "Basic Service Charge"; "Time Rental Charges" to be computed on rates listed in a schedule (which varied in different months of the year) per thousand square feet of equipment used per calendar day; a "Spreader Tie Charge" at the rate of $0.05 per spreader tie plus $0.0046 per inch of nominal length or fraction thereof; and an "Additional Work Charge" at the rate of $.055 per square foot of concrete form surface in addition to the first 95,600 square feet. Paragraph 7 of such agreement provided:

"7. Lessee agrees to employ a steel forms foreman (hereinafter called Foreman) acceptable to Lessor during the full time that any part of the equipment delivered hereunder is retained by Lessee. The compensation of this foreman, to be payable weekly, shall be at the prevailing carpenter foreman rate at the construction project covered by this Agreement. However, this compensation shall be not less than $2.87½ per hour with a minimum of time and one-half for over forty hours per week and with a minimum weekly pay of $125.00. (Ref. Part 15 herein.)"

Paragraph 15 stated:

"15. In order to assist Lessee in employing a foreman, Lessor will furnish Lessee with the name or names of men acceptable to Lessor and endeavor to place them in communication with Lessee, it being understood that any such person engaged by Lessee shall be an employee of and responsible solely to Lessee. Lessor shall have neither control over nor direction of any such foreman, who shall be subject to discharge by Lessee at any time, and Lessor shall never be liable or responsible for any acts or omissions of any such foreman. In

case of discharge, Lessee shall immediately employ another foreman acceptable to Lessor.

"Said foreman shall have direct charge and superintendence of the setting, stripping, using, care, reshipment and all other handling of the leased property under Lessee's supervision and direction, and when no steel form work is available may do other work on the construction project during regular working hours, as directed by Lessee and for which Lessee deems him qualified. Said foreman shall, on behalf of Lessee, make regular daily reports to Lessor of the cost and progress of the specified form work, of additional form work under Parts 6a and 6b herein, of the condition and use made of the equipment and other relevant data upon daily report sheets supplied by Lessor. In order to promote the form work, Lessor may give advice and suggestions to Lessee through said Foreman and shall not be liable therefor so long as it acts in good faith. Lessee shall be responsible for said Foreman's acts and omissions, including loss of and damage to Equipment as elsewhere provided herein."

In pursuance of such agreement certain "concrete and steel form equipment, accessories and plan service was delivered to the job site" for use in building "foundation walls, tunnel entrance, plant box walls, piers and interior columns in gym."

The petition then alleges that defendant was acquainted with the qualifications of one Marken through knowledge of its field service personnel based on other projects where defendant's steel forms were used and where Marken had acted as foreman; that under the agreement defendant submitted Marken's name as acceptable for foreman and put Marken in communication with Pyle, and thereafter Marken

acted as steel forms foreman on the high school project. Defendant paid Marken mileage for his move to Springfield and, upon completion of the work, defendant also paid him the sum of $23.83 as a "bonus" and an "award" of $100 for having secured a satisfactory form job. After Pyle's school construction project was completed, Marken "acted as steel forms foreman on another project where defendant's forms were being used."

During the progress of the high school project Marken made daily reports, which reports included information as to man hours and labor costs for the men he supervised and square feet of form work erected and stripped.

The petition then charges that while he was acting as foreman on this project Marken was the agent, servant, employee, representative and supervisory employee of the defendant and was subject to its control; that plaintiff was employed, by Pyle, to work on the project and was assigned to the form crew under the supervision of Marken, "performing work contemplated by the agreement * * * and involving defendant's forms," and while so engaged was injured in a fall from a scaffold which was an "integral part of the form work," and which scaffold had been "conceived, erected and maintained" under the control and supervision of Marken.

Recovery was sought on account of negligence in failing to provide a safe scaffold under the provisions of § 292.090, RSMo 1949, V.A.M.S., and in failing to provide the protection required by § 292.480.

The main question is, did the petition state a cause of action?

At the outset we note that the transcript includes, and the plaintiff-appellant's brief makes reference to, certain interrogatories and answers thereto. We cannot consider such interrogatories or their answers in passing upon the sufficiency of the petition.[1]

1. Hudson v. Jones, Mo.App., 278 S.W.2d 799; State at inf. of Dalton ex rel.

Tucker v. Mattingly, Mo.App., 275 S.W. 2d 34; State ex rel. Hendrix v. Ameri-

We do, however, agree with another of appellant's contentions, i. e., that plaintiff is not bound by the provisions in the contract made between Pyle and the defendant to the effect that the person engaged as foreman should be an employee of and solely responsible to the lessee, without control over or direction by the lessor. Plaintiff, having pleaded the contract, cannot deny that it existed, but he was not a party to such contract and could plead and prove additional facts and circumstances showing actual employment and control over Marken regardless of how the lessor and lessee may have, in writing, purported to fix responsibility as between themselves.[2]

Turning to the main question: Disregarding for the moment the general statement in the petition that Marken was the servant-employee of the defendant, and taking all the pleaded facts, including the rental contract, do such facts make a jury question on the issue as to whether or not Marken was the servant of the defendant?

It is impossible to write a brief but comprehensive definition which will encompass all situations where, and between whom, the relationship of master and servant exists. The basic ingredient of such relationship is the right in the master to control the physical activities of the servant, or the right to direct the employee in regard to the manner of performance.[3] In fact, one of the reasons for the existence of the doctrine of respondeat superior lies in this power of the master to exercise detailed control over the manner in which the work is done.[4]

Parenthetically, however, this "right to control" must in some instances (at least in borrowed servant situations) be refined and distinguished from an arrangement which permits suggestions as to details, or a system of cooperation between the parties which delegates to one of them the privilege to specify the order and sequence of acts to be done, yet leaves the ultimate control in someone else.[5]

It is said that (except as to a joint undertaking) no man can serve two masters in the performance of one single act. However, he may, upon the same general undertaking, perform one act as servant of one and yet, in regard to the doing of some other thing, be acting as the servant of another or in another capacity; and the question then arises, whose business is he on? Whose act was he performing? To whose control was he subject at the exact time of the occurrence on account of which liability is claimed?[6]

In determining who has "right of control" many and various factors are to be considered. No certain one of these

can Surety Co. of New York, Mo.App., 176 S.W.2d 67.

2. Brenner v. Socony Vacuum Oil Co., 236 Mo.App. 524, 158 S.W.2d 171, 174–175; Bertino v. Marion Steam Shovel Co., 8 Cir., 64 F.2d 409, 412; Tomlinson v. Marshall, 208 Mo.App. 381, 236 S.W. 680, 684.

3. 35 Am.Jur., Master and Servant, § 3, p. 445; Glynn v. M. F. A. Mut. Ins. Co., 363 Mo. 896, 254 S.W.2d 623, at loc. cit. 624, 36 A.L.R.2d 256, and authorities cited; Skidmore v. Haggard, 341 Mo. 837, 110 S.W.2d 726, and authorities cited at loc. cit. 730; Rider v. Julian, Mo., 282 S.W.2d 484, 493; Hammonds v. Haven; Mo., 280 S.W.2d 814, 818.

4. Bass v. Kansas City Journal Post Co., 347 Mo. 681, 148 S.W.2d 548, 552; see Corder v. Morgan Roofing Co., 350 Mo. 382, 166 S.W.2d 455, 457.

5. Schepp v. Mid City Trucking Co., Mo. App., 291 S.W.2d 633; see Wills v. Belger, 357 Mo. 1177, 212 S.W.2d 736.

6. 56 C.J.S. Master and Servant § 2d(2), p. 37, et seq.; Restatement of the Law of Agency, § 227, p. 500, § 226b, illustration 5, p. 500; Vert v. Metropolitan Life Ins. Co., 342 Mo. 629, 117 S.W.2d 252, 116 A.L.R. 1381; McFarland v. Dixie Machinery & Equipment Co., 348 Mo. 341, 153 S.W.2d 67, 70–72, 136 A.L.R. 516; see Wills v. Belger, 357 Mo. 1177, 212 S.W.2d 736.

factors is controlling; it depends upon the circumstances of the individual case.[7] Closely allied to the power of control is the ability to *enforce* orders in regard to the manner of performance, usually the right to fire the employee for failure to pursue the methods of and perform the acts in the manner required by the employer.[8] Some other factors which we deem pertinent to the case before us are: What was the aim, intention and belief of the parties in regard to the relationship? What was the *interest* of the party sought to be charged as master in the particular transaction which gives rise to the claim of liability, and whose purposes were being served?[9] Who had the right to say when this work should proceed? To whom did the employee look for continuance or discontinuance of employment in the work which he was doing, and for the payment of his regular wages?[10]

■■ Laying these questions beside the situation pleaded: The intention and belief of Pyle and defendant is expressed in their agreement. True, plaintiff is not bound by such contract and can plead and prove additional facts which show a different relationship than that expressed, but until such contrary situation is shown the agreement has great weight in determining what the parties were trying to do. The intention of Marken is also of course important (in determining whether he had submitted to control of Pyle or of defendant),[11] but we cannot infer, without the pleading of facts to sustain such inference, that he intended to, and did, surrender himself to the direction of a different master and under a status contrary to that expressed in such contract.

The purpose of Pyle, the object sought to be accomplished, was the erection of concrete walls and other structures upon his construction project. The purpose sought to be accomplished by the defendant was to rent certain equipment, and to secure payment for its use based upon the formula agreed upon. Both defendant and Pyle had an object in seeing that defendant's property was properly handled and returned in good condition, the defendant because it was the owner, Pyle because he was bound to do so. The same might be said of almost any rental agreement.

The specific act from which it is claimed the liability arose was the construction and maintenance of a scaffold to be used in connection with, an "integral part of," the metal forms in the erection of walls upon the construction project. This work was the business of Pyle. It was not the business of the defendant, and defendant therefore owed no duty in its erection. Had the injury occurred in the doing of some act in connection with Marken's making of daily reports to the defendant (which furnished a basis for the charge of rental) a different status or relationship in respect to such act might have been involved, but that is not the situation here and we are not called upon to pass upon it.

In so far as it is shown or can be inferred from facts stated in the petition, it was Pyle's prerogative to tell Marken to work, or not work, on foundation walls or

7. Barnes v. Real Silk Hosiery Mills, 341 Mo. 563, 108 S.W.2d 58, 61; Thurston v. Hobby, D.C.W.D.Mo., 133 F.Supp. 205, 210.

8. 56 C.J.S. Master and Servant § 2d(1), p. 35; 57 C.J.S. Master and Servant § 563b, p. 279; Hackler v. Swisher Mower & Machine Co., Mo.App., 284 S.W.2d 55, 58; Fruco Const. Co. v. McClelland, 8 Cir., 192 F.2d 241, 244.

9. 57 C.J.S. Master and Servant § 566a, p. 289; Bertino v. Marion Steam Shovel Co., 8 Cir., 64 F.2d 409, 413; see Allen v. Coglizer, Mo.App., 208 S.W. 102.

10. Labatt's Master & Servant, 2nd ed., vol. 1, § 19, p. 60; Schultz v. Moerschel Products Co., Mo.App., 142 S.W.2d 106, 109; Ellegood v. Brashear Freight Lines, 236 Mo.App. 971, 162 S.W.2d 628.

11. Wittgrove v. Green Lea Dairies, Mo. App., 223 S.W.2d 114, 116; Evans v. Farmers Mut. Hail Ins. Co., 240 Mo. App. 748, 217 S.W.2d 705, 709.

tunnels, where to do it, when to do it, how to do it; whether to set the forms so as to make the walls ten feet high or twenty feet high; whether to use ten pieces of equipment or twenty; how many men to use in doing it; when to begin, when to quit and when to commence again; whether to do an unsatisfactory job all over again; and when to discontinue all work. It was within his power to enforce such orders by firing Marken if he disobeyed them. In event defendant had sent some order or request to Marken which was contrary to the instruction given him by Pyle, he would have been required to obey Pyle or run the risk of discharge. Defendant could not have fired him from the job. Pyle could.

█ Plaintiff argues, ably, that the fact that the contract provides for a foreman who shall have "direct charge and superintendence of the setting, stripping, using, care, reshipment and all other handling of the leased property" (under Pyle's "supervision and direction," however) and the fact that defendant had a hand in selection of Marken as that foreman, by recommending him and by paying his mileage to Springfield, and that he further paid him a small bonus and award at the conclusion of the project, are indicative of reservation of control in the defendant for the purpose of accomplishing its own purpose. This argument would be more effective had it been pleaded that Marken was or had been in the general employment of the defendant; for, such general employment having once been established, a complete surrender of the right of control must be made, and it might have been possible to infer that such surrender had not been made. But here there was no previous employment by the defendant, nor was there any claim of a course of conduct or practice whereunder the defendant sent Marken out on jobs as defendant's man. All that is pleaded is that he had had the previous experience of acting as foreman on projects where defendant's forms had been used. The fact that he was familiar with defendant's product did not make him the defendant's employee.

█ A lessor has, of course, the right to make the conditions under which he will entrust his property to the possession of the other. It is not unusual, or necessarily indicative of any reservation of the right to direct the operation of such equipment, that he restricts its use and handling by a qualified person or to a restricted class of persons. The main and all-important thing is that the contract did not require the defendant to build a scaffold or reserve any right in the defendant to direct the conduct or the actions of the foreman in the way he built it or in the way he applied the use of the leased equipment in the building of the walls, tunnel entrance, piers and columns on Pyle's project (nor is such pleaded by any fact extraneous of the contract). It is our conclusion that the contract and other facts pleaded did not furnish any basis from which it could be inferred that Marken was defendant's servant in the building or maintenance of the scaffold.

█ Is plaintiff's petition aided against demurrer by the statement that Marken was the "agent, servant, employee, representative and supervisory employee of defendant, Economy Forms Corporation," and was subject to its right of control? Such allegation is at best a general statement. In determining its legal sufficiency, a petition must be considered as a whole, and where general and specific allegations are made concerning the same subject, the specific allegations control and limit the general allegation. If the two are inconsistent, the general allegation must fail.[12]

The general statements served only as forms to contain plaintiff's general theory

---

12. Farm & Home Savings & Loan Ass'n v. Armstrong, 337 Mo. 349, 85 S.W.2d 461, 464; Anderson v. Inter-River Drainage and Levee Dist., 309 Mo. 189, 274 S.W. 448, 451; Devault v. Truman, 354 Mo. 1193, 194 S.W.2d 29, 32; Munsey v. Eagle Packet Co., Mo.App., 50 S.W.2d 754, 756.

of liability. Into these, by his specific allegations, he poured his concrete facts. The forms have been stripped away by the motion to dismiss, and there remain only the hardened concrete columns of the specifications to support his case. Lacking the essential reinforcement of the master-servant relationship, his whole edifice must collapse.

It is our conclusion that the motion to dismiss was properly sustained, and the judgment is therefore affirmed.

McDOWELL, P. J., and STONE, J., concur.